## SOUTH TEXAS LUMBER CO. v. EPPS *et al.*

No. 4743.   Opinion Filed June 22, 1915.

(150 Pac. 164.)

1. **MECHANICS' LIENS—Personal Judgment—Levy on Property Subject to Mechanic's Lien.** In order to reach the property on which the material purchased was used to improve, and in order to subject the same to the payment of the debt so incurred, it is not necessary to have first obtained a judgment fixing a lien thereon in favor of the seller of the material, but it can be reached in such cases by first reducing the account to a personal judgment, and then levying on said real property by an execution issued on said judgment, provided no superior interest of a third party has intervened.

2. **LIS PENDENS—Mechanics' Liens—Purchase Pending Suit—Personal Judgment.** A materialman does not lose his lien merely because he fails to file the same as the statute provides. The filing of the lien is only necessary to protect him against the interest of third parties; and if, pending suit to fix the lien on the property for material furnished to improve the same, a third party purchases the property, even though in good faith for value, if the suit is carried to a successful termination, and a judgment is therein procured fixing a lien on said property, then the said lien so fixed is superior to the interest of the said purchaser, but, if the court refuses to enter judgment fixing a lien on said property, or if plaintiff abandons his purpose to fix said lien in said suit, and a personal money judgment only is rendered therein against defendants and the judgment becomes final after that date, the purchaser's title to the property is relieved of any interest or claim that might have attached thereto had plaintiff carried its suit for that purpose to a successful conclusion.

3. **HOMESTEAD—Exemption—"Purchase Price."** A debt contracted for material used in the improvement of the homestead cannot be considered as constituting a part of the "purchase price" of said homestead.

(Syllabus by Mathews, C.)

*Error from District Court, Jefferson County;*
*Frank M. Bailey, Judge.*

Action by the South Texas Lumber Company against C. C. Epps and another for balance due for material sold and for foreclosure of a lien. A personal judgment only was rendered against defendants, execution was levied on the property on which the lien was claimed, the property was sold, and confirmation of sale, being opposed by A. R. Arnold, as owner of the property, was denied and the sale set aside, and plaintiff brings error. **Affirmed.**

[NOTE.—This case, in so far as it held that the filing of a materialman's lien statement within the time fixed by the statute is not necessary to effect a lien as between the original parties to the contract, has been overruled in *Bryan v. Orient Lbr. Co.*, 156 Pac. 897 (not yet officially reported).—Reporter.]

*Bridges & Vertrees*, for plaintiff in error.

*Dillard & Ellis*, for defendants in error.

Opinion by MATHEWS, C. The facts in this case are undisputed and show that the South Texas Lumber Company, who will herein be styled as plaintiff, in February, 1909, sold to Epps and wife, who then owned a certain lot in the town of Hastings, certain building material for the purpose of erecting a dwelling house on said lot. On the 9th day of May, 1911, plaintiff filed suit against Epps and wife for a balance due for said material in the sum of $281.31, and alleged in its petition that it had a lien on the lot for said sum, and asked for judgment foreclosing said lien and for an order of sale to satisfy the judgment. No materialman's lien was ever fixed upon the property under the statutes for that purpose.

In September, 1911, Epps and wife sold the house and lot in controversy to A. R. Arnold, who will hereinafter

be styled defendant, for a cash consideration of $2,000. On the 7th day of December, 1911, a personal judgment only was rendered against Epps and wife for the amount sued for·; no decree being made to establish the lien or **ordering a foreclosure as prayed for.** On the 20th day of December, 1911, an execution was .issued against Epps· and wife, the same was levied on the property in controversy, and on the 15th day of February, 1912, said property was sold by the sheriff to one Schoolfield for $1,300. At the March term, 1912, of the district court plaintiff asked that the sale be confirmed. The defendant filed a motion opposing said confirmation, alleging that the property in controversy was purchased by him on the 11th day of September, 1911. Plaintiff, answering said motion, alleged that Arnold had notice that it had filed suit against Epps and wife upon its contract with them to furnish ˙material for erecting a dwelling house on the property in controversy, and were seeking therein to establish their lien thereon. On the 9th day of September, 1912, the court sustained defendant Arnold's motion to vacate and set aside the sale of said property and refused to confirm the sale, and this case is here on appeal; the plaintiff complaining of the order of the court in sustaining the motion of Arnold to set aside the sale by the sheriff of the property in controversy.

We agree with plaintiff's contention that, in order to reach the property on which the material purchased was used to improve, and in order to subject the same to the payment of the debt so incurred, it is not necessary to have first obtained a judgment declaring a lien to exist in favor of the plaintiff on the specific property and foreclosing the same, but it can be reached, in cases where an account is due for material furnished for the improve-

ment of certain real property, by first reducing the account to a personal judgment, and then levying on said real property by an execution issued on said judgment, provided no superior interest of a third party has intervened.

It is also true that a materialman does not lose his lien merely because he fails to file the same as the statute provides. The filing of the statutory lien only protects him against third parties, and, while the property for which the material was furnished remains in the hands of the original party, the lien can be enforced against it as long as the account is not barred by the statute of limitation.

It appears to us that, as urged by defendant in his brief, the only vital questions in the case are: (1) What is meant by "purchase price," as used in section 3, art. 12, of the Constitution? and (2) was the pendency of plaintiff's action in the district court notice of anything that could affect the rights of defendant in the property in controversy?

That part of section 3, art. 12, of the Constitution applicable to this case is as follows:·

"Provided that no property shall be exempt for any part of the purchase price while the same, or any part thereof, remains in the possession of the original vendee, or in possession of any purchaser from said vendee, with notice."

The question here presented is: Is a debt contracted for material used in the improvement of the homestead to be considered as constituting a part of the "purchase price" of said homestead? By the weight of all of the authorities brought to our attention we must answer in the negative.

The case of *Smith v. Lackor*, 23 Minn. 454, presents a case similar to the one at bar, and the court there said:

"The position of defendant's counsel that the debt contracted for the lumber which was used in the construction or erection of the dwelling house on the lot in question was a part of the purchase price paid for the homestead was distinctly repudiated by this court in *Cogel v. Mickow*, 11 Minn. 475 [Gil. 354], in which it was said, in reference to such a debt: 'It is no more a part of the purchase money [of the real estate] than the price of a fruit tree or a fence post, used for the improvement of the property, would be.' The thing to which the homestead right attaches, under the statute, is not the house, considered alone as personal property severed from the freehold, but the real estate interest of the owner in the land, which carries with it the dwelling as an appurtenance and part of the realty. Any debt contracted in the purchase of this real estate interest represents, in whole or in part, the purchase money of the property, but not debts incurred in making improvements or erections thereon of any kind. The indebtedness to Rohrer for lumber which was used in the erection of defendant's dwelling house constituted no part of the purchase price of his homestead."

In the case of *Bartle v. Bartle*, 132 Wis. 392, 112 N. W. 471, is the following:

"It is very clear, therefore, that where money is loaned, as in this case, upon a promissory note, the mere fact that it was understood it should be used and was in fact used in the construction of buildings upon real estate gives the creditor no lien upon such real estate." *Heuisler et al. v. Nickum*, 38 Md. 270; *Eyster v. Hatheway*, 50 Ill. 521, 99 Am. Dec. 537; *Austin v. Underwood*, 37 Ill. 438, 87 Am. Dec. 254; *City Savings Bank v. Thompson*, 91 Neb. 628, 136 N. W. 992, 41 L. R. A. (N. S.) 89.

Under these authorities it becomes apparent that the account of plaintiff for the material sold to Epps and

wife could not be denominated "purchase price" money for the property levied on. Plaintiff did not sell Epps and wife this property, or any part thereof. It simply sold a bill of lumber which was used in the construction of the house on the lot in controversy. The words "purchase price" mean the consideration paid or agreed to be paid upon the passing of the title to property in its entirety (32 Cyc. 1264-1267), and plaintiff cannot avail itself of this provision of the Constitution unless it had sold the house and lot to Epps. The words "purchase price" always carry with them the idea of the passing of title. Plaintiff's right, as far as the Constitution is concerned, to subject the property in controversy to the payment of its account for material furnished for its improvement, is not based on section 3, art. 12, of the Constitution, but upon section 2 of said article, which, as far as applicable, is as follows:

"The homestead of the family shall be, and is hereby protected from forced sale for the payment of debts, except for the purchase money therefor or a part of such purchase money, the taxes are due thereon, for work and material used in constructing improvements thereon."

It will be noted that section 2 provides that the homestead shall be exempt from forced sale for the collection of all debts except the four classes specifically mentioned, viz., the purchase price, or a part thereof, taxes due thereon, the claim of the laborer, and the claim of the materialman. Nothing is said, however, in this section about the respective rights of the parties where the property has passed into the hands of a subsequent purchaser with such claims still subsisting. But section 3 does provide "that no property shall be exempt for any part of the purchase price while the same or any part thereof re-

mains in the possession of the original vendee, or in possession of any purchaser from such vendee, with notice," showing clearly that the lawmakers had in mind four separate and distinct classes of creditors, that they intended that the words "purchase price" should mean just exactly what they have always meant, and nothing more, and that the unpaid vendor, the person from whom the entire property passes, was the one and only kind of creditor contemplated when section 3 was framed. Epps was not the "original vendee" of South Texas Lumber Company, and its claim was not, in any sense, a part of the unpaid purchase price of the property in the hands of Arnold. The relationship of vendor and vendee never existed between the lumber company and Epps so far as the property levied on and sold is concerned.

The most serious proposition advanced by plaintiff is the contention that at the time this action was filed in the district court Epps and wife were still the owners of the property which plaintiff was seeking therein to subject to this lien, and that defendant purchased the property pending the action, which of itself was notice to defendant of the interests claimed by plaintiff in the property, and in this contention plaintiff relies upon section 5621, Comp. Laws 1909, which is as follows:

"When a petition has been filed, the action is pending, so as to charge third persons with notice of its pendency, and while pending no interest can be acquired by third persons in the subject-matter thereof as against the plaintiff's title."

In view of the broad interpretation placed upon the word "title" as here used by Judge Williams in the well-considered case of *Holland v. Cofield*, 27 Okla. 469, 112 Pac. 1032, we believe that, if plaintiff had have followed

up the advantage gained by filing its suit before the sale of the property praying that it have a judgment fixing a lien on this property, it would have been successful in having the property applied to the payment of its debt.

In the case above referred to, in construing this section, the court says:

"This section was borrowed from Kansas. In *Smith v. Kimball*, 36 Kan. 747 [13 Pac. 801], said section was construed by the Supreme Court of that state, wherein it was said: '* * * We give the word "title," in the section, its broadest meaning and most comprehensive signifi-cation. Judge Story's definition is: "A purchase made of property actually in litigation *pendente lite* for a valuable consideration, and without any express or implied notice in point of fact, affects the purchaser in the same manner as if he had such notice; and he will accordingly be bound by the judgment or decree in the suit." 1 Eq. Jur. section 405. Among the actions to which this doctrine will apply are suits for the foreclosure of unrecorded mortgages (*Chapman v. West*, 17 N. Y. 125; *Center v. Bank*, 22 Ala. 743; *McCutchen v. Miller*, 31 Miss. 65); to foreclose vendors' liens; to set aside a decree of partition; * * * to enforce a charge against real property, whatever be the form of the action (*Seabrook v. Brady*, 47 Ga. 650). Actions in the nature of creditors' bills have been considered as giving notice to subsequent purchasers of the particular property involved in the controversy. *Jackson v. Stone*, 13 Johns [N. Y.] 147; *Bradley v. McDaniel*, 48 N. C. 128; *Fogerty v. Sparks*, 22 Cal. 143; *Bolin v. Connelly*, 73 Pa. 336; *Hill v. Oliphant*, 41 Pa. 364. And see generally, on this subject, Wade on the Law of Notice, section 342, and authorities cited.' Under this decision, which seems to be binding upon this court, * * * the plaintiff's vendor's lien claim comes within the terms of said section."

It is apparent a materialman's lien unfiled has the same standing as an unrecorded mortgage or vendor's lien,

and even better standing than a creditor's bill, and, if an action to establish or foreclose this kind of lien is notice under the statute, then it follows that an action, as in the case at bar, to fix an unrecorded materialman's lien, is also notice to those who purchase the property, pending the action, and we are of the opinion that, nothwithstanding plaintiff's status was not covered by the provisions of the Constitution on this subject, yet we believe it was amply protected under the provisions of said section 5621, *supra*, which in no way is in conflict with the Constitution.

But defendant purchased the property in controversy in September, 1911, and the judgment was rendered in December, 1911, which was a personal money judgment only against Epps and wife for the unpaid balance claimed. Plaintiff had asked in said suit that a lien be fixed on the property in controversy and for an order directing the same to be sold to satisfy the judgment. The court refused to enter a judgment to that effect, or, at least, it was not entered, and it becomes immaterial whether the court refused to enter the order or it was withdrawn or abandoned by the plaintiff—a matter upon which the record is silent. This judgment was unappealed from, and so was final.

Now, at all times during the pending of the action, up until judgment was rendered defendant had *lis pendens* notice that plaintiff was claiming an interest in the property in controversy for the material furnished to improve the same, and such interest as plaintiff had was superior to the interest defendant acquired with notice thereof, but on the 7th day of December, 1911, the court either decided that plaintiff had no enforceable claim or interest against the property in question or plaintiff vol-

untarily abandoned the claim—it would have the same effect in either case—and after that date it became as if no suit had ever been filed, and defendant's title to the property was relieved of any interest or claim that might have attached thereto had plaintiff carried his suit for that purpose to a successful conclusion.

For the reasons given, the judgment should be affirmed.

By the Court: It is so ordered.