Dodier Realty & Investment Company, a Corporation, Appellant (Plaintiff), v. St. Louis National Baseball Club, Inc., Also Known as National Sports, Incorporated, a Corporation, Respondent (Defendant), American League Baseball Company of St. Louis, a Corporation, Appellant (Cross-Defendant on Counterclaim), No. 42067—238 S. W. (2d) 321.

Court en Banc, February 16, 1951.

Rehearing Denied, April 9, 1951.

*Lon Hocker* for appellants; *Jones, Hocker, Gladney & Grand* and *William O. DeWitt* of counsel.

984

*Rhodes E. Cave, Thomas S. McPheeters* and *George W. Simpkins* for respondent; *Bryan, Cave, McPheeters & McRoberts* of counsel.

986

[321] LEEDY, J.—Dodier Realty & Investment Company, a corporation (hereinafter referred to as Dodier), the owner-lessor of premises in the City of St. Louis known as Sportsman's [322] Park, brought ejectment against St. Louis National Baseball Club, Inc., to recover possession and for $222,500 damages for defendant's alleged wrongful withholding thereof. Defendant filed answer with which was coupled a counterclaim whereon American League Baseball Company of St. Louis, a corporation, was made a cross-defendant. On the theory that the answer raised purely equitable defenses and sought purely equitable relief, the cause was, on defendant's motion, transferred to an equity division where the issues raised by the petition and answer and those raised by the counterclaim and reply were separately tried. Such separate hearings culminated in a single judgment or decree denying ejectment, and finding for defendant (in part) on the counterclaim, from which both plaintiff and the cross-defendant on the counterclaim appeal.

Sportsman's Park is the playing field for both of the major league baseball teams of St. Louis, the National League "Cardinals" and American League "Browns". The instrument evidencing the agreement under which respondent, as the owner of the Cardinals, uses the park (and out of which this action arose) is referred to by Dodier as a "lease-license," and by respondent as a "lease". Its precise nature need not be determined because our questions neither involve, nor are they affected by, such distinctions, so for brevity and convenience, the term "lease" will be used throughout this opinion. It was entered into between Dodier, as lessor, and a corporation bearing the name "St. Louis National Baseball Club," as lessee, for a term of 14 years from January 1, 1937, renewable at the option of the lessee for an additional term of 10 years; rental at $35,000 per year, plus one-half of the cost of maintenance. The lease provided for exclusive possession in the lessee of certain office quarters, and intermittent possession of the playing field, grandstands, etc.

This litigation concerns the validity of two declarations of forfeiture of that lease, made by Dodier at different times and for different reasons (one for an alleged breach of a covenant not to assign without lessor's consent, and the other for an alleged default in the payment of rent), so that two separate and distinct controversies are involved, one designated by the parties as the "assignment controversy" and the other as the "rent controversy". This separateness is maintained in this court by dividing the briefs into sections severally bearing those designations, and which are complete in themselves, in that each contains a statement of the relevant facts, points relied on with citation of authorities, and an argument touching one such particular aspect of the case. This opinion disposing of the appeal will, therefore, follow a similar pattern of division.

## THE ASSIGNMENT CONTROVERSY

The facts giving rise to the assignment controversy are not in dispute. In January, 1948, the lessee, St. Louis National Baseball Club, was merged into another Missouri corporation, National Sports, Incorporated. The latter had acquired all except a fraction (less than 1%) of the preferred and common stock of the former. The merger was effected pursuant to our General Business and Corporation Act. (Laws 1943, p. 410; § 4997.1 et seq., Mo. R. S. A.) A "plan of merger" having been previously submitted to, and approved by, the stockholders of both corporations, as required by the statute (§ 65), articles of merger were entered into in which National Sports, Incorporated, was designated as the "surviving corporation" under § 62 of the act. Such articles also provided for a change in name from "National Sports, Incorporated," to "St. Louis National Baseball Club, *Inc.*" The merger, as well as the change in name, became effective January 10, 1948, upon the issuance by the Secretary of State, under § 68, of a certificate of merger (and of change in name), which was duly recorded in the Office of the Recorder of Deeds of the City of St. Louis on February 19, 1949. We need not further particularize the facts respecting the merger because the single question presented under the "assignment controversy" is one of law; that is, whether merger, under the facts outlined, [323] operated as, or constituted an assignment of the lease in violation of paragraph 14[1] thereof so as to entitle Dodier to declare a forfeiture

---

1. (14) "The second party covenants and agrees that it will not assign the right hereby granted to it, without the previous written consent of the first party, and that the assignee or successor in interest of the second party, from time to time, shall be and remain liable for the due and faithful performance of all the covenants, agreements, conditions and stipulations hereof, to be kept, observed and performed by the second party, it being further understood that such assignment shall not release the second party from the responsibility herein contained."

under paragraph 15[2].

We have been cited to no case holding devolution through corporate merger, as here involved, to be within the prohibition of a covenant against assignment without the lessor's consent. That precise question does not appear to have been at issue in any of the adjudicated cases. Forfeitures of leaseholds are looked upon with disfavor. They will not be enforced unless the breach is unequivocal. J. E. Blank, Inc. v. Lennox Land Co., 351 Mo. 932, 174 S. W. 2d 862, 868-869. In construing restraints, courts are careful not to go beyond express stipulations.

Plaintiff spells out an intention to limit the right granted to the particular corporate entity named in the lease by ascribing to the word "assign" its broad sense or meaning "transfer," coupled with the circumstance that another paragraph of the lease prohibited lessee from using the premises for any other purpose than that of playing championship baseball games in the National League, and so negatived the idea that the nonassignability clause was to prevent the use of the park for some other purpose. It is then argued that the vesting of the rights of the merging, tenant corporation in the surviving corporation was "entirely voluntary, and not (in the sense of involuntary) by operation of law;" that under the 1943 act, there was an extinguishment of the merging corporation, and, by the very wording of the statute, the merger "transferred" the lessee's rights in the lease, and hence there was a violation of the covenant for which forfeiture was provided.

Respondent, conceding that any *assignment* by the tenant without the landlord's consent was prohibited, urges that by the use of the words "successor in interest" in the covenant in question, it was expressly contemplated that there might be a successor who was not an assignee, and contends that the passing of the leasehold title to the merged corporation was by operation of law resulting from the merger, and did not constitute an assignment.

Dodier's claim of voluntariness is based on the fact that the directors and stockholders approved and brought about the merger. They took all the steps necessary to bring the statute into operation, but we do not regard this circumstance as determinative of the question of whether the transfer of the leasehold (as an asset of the merging corporation) was by operation of law. It was said in United States v. Seattle-First National Bank, 321 U. S. 583: "But in a broad sense, few if any transfers ever take place 'wholly by operation of law,' for every transfer must necessarily be a part of a chain of human

---

2. (15) "* * * every failure * * * to keep and perform any of the covenants, agreements, conditions and stipulations herein contained, shall, at the option of the first party, make and create a forfeiture of said right hereby granted and a termination of the time for which said premises are to be used by the second party," etc.

events, rarely if ever other than voluntary in character. Thus to give any real substance to the exemption, we must take a more narrow view and examine the transfer apart from its general background. We must look only to the immediate mechanism by which the transfer is made effective. If that mechanism is entirely statutory, effecting an automatic transfer without any voluntary action by the parties, then the transfer may truly be said to be 'wholly by operation of law.'

[324] "Here the actual transfer to respondent of the legal and beneficial title to the securities owned by the state bank was not effected by or dependent on any of the voluntary acts relating to the consolidation agreement or the ratification or approval thereof. Nor was any voluntary deed, conveyance, assignment or other instrument utilized. Rather the transfer occurred solely and automatically by virtue of § 3 of the National Banking Act."

§ 70 specifies the effect of merger, in pertinent part, thus:

"(a) The several corporations parties to the plan of merger * * * shall be a single corporation, which * * * shall be that corporation designated in the plan of merger as the surviving corporation, * * *.

"(b) The separate existence of all corporations parties to the plan of merger * * *, except the surviving * * * corporation, shall cease.

"(c) Such surviving * * * corporation shall have all the rights, privileges, immunities, and powers and shall be subject to all the duties and liabilities of a corporation organized under this Act.

"(d) Such surviving * * * corporation shall thereupon and thereafter possess all the rights, privileges, immunities, and franchises, as well of a public as of a private nature, of each of the merging * * * corporations; and all property, real, personal, and mixed, and all debts due on whatever account, including subscriptions to shares, and all other choses in action, and all and every other interest, of or belonging to or due to each of the corporations so merged * * *, shall be taken and deemed to be transferred to and vested in such single corporation without further act or deed; and the title to any real estate, or any interest therein, under the laws of this State vested in any of such corporations shall not revert or be in any way impaired by reason of such merger * * *.

"(e) Such surviving * * * corporation shall thenceforth be responsible and liable for all the liabilities and obligations of each of the corporations so merged * * *. Neither the rights of creditors nor any liens upon the property of any of such corporations shall be impaired by such merger or consolidation."

Dodier says that the fundamental question upon which this appeal must be decided is whether, under the statute above set out, the

merging corporation (St. Louis National Baseball Club) -ceased to exist, its theory being that such merging corporation was dissolved and did cease to exist, so that there was necessarily a transfer (and, therefore, an "assignment") of the leasehold.

The former statute (in effect at the date of the execution of the lease, § 5361, R. S. '39, and Mo. R. S. A., then § 4954, R. S. '29, and Mo. St. Ann.), merely provided that "any two corporations (of the kind therein mentioned) may amalgamate, unite and consolidate said corporations and form one consolidated corporation," etc. The provisions of the 1943 act, in which merger and consolidation are separately treated, do not appear to have undergone judicial construction in this jurisdiction. They are, of course, not the same. Distinctions to be drawn between the two are thus noted in 19 C. J. S., Corporations, § 1604: "A true consolidation, which exists where a new corporation springs into existence to assume the liabilities of the former corporations and the prior corporations are dissolved and cease to exist, should be distinguished from a merger, which 'means something more than a mere consolidation,' and which exists where one corporation is continued and the others are merged in it without the formation of a new corporation."

And in 13 Am. Jur., Corporations, § 1176, it is said: "As the term [consolidation] is correctly used, there can never be a consolidation of corporations except where all the constituent companies cease to exist as separate corporations and a new corporation, the consolidated corporation, comes into being. * * *

"The second of such groups [transactions whereby the interests of two or more [325] corporations become identified] comprehends a merger which consists of a combination whereby one of the constituent companies remains in being—absorbing or merging in itself all the other constituent corporations. It is therefore not the equivalent of consolidation."

The principle is epitomized in Freeman v. Hiznay, 349 Pa. 89, 36 A. 2d 509, 154 A. L. R. 423: "It is true that while, in the case of a merger, one of the combining corporations continues in existence and absorbs the others, in a consolidation all of the combining corporations are deemed to be dissolved and to lose their identity in a new corporate entity which takes over the properties, powers, and privileges, as well as the liabilities, of the constituent companies: Buist's Estate, 297 Pa. 537, 541, 147 A. 606, 607."

It will be recalled that § 70 provides in (a) that "The several corporations parties to the plan of merger * * * shall be a single corporation"—that one "designated in the plan of merger as the surviving corporation;" and in (b) that "The separate existence of all corporations parties to the plan of merger * * *, except the surviving * * * corporation, shall cease." We think these provisions are to be construed as working a dissolution of the merging

corporation, and we so hold. Such consequence is solely by force of the statute, and hence by operation of law. By the same token, it must be held that the transfer of assets, as an incident of the merger, is effectuated under and by force of the statute itself (§ 70 (d) providing that "all property * * . * shall be taken and deemed to be transferred to and vested in such single corporation without further act or deed"). The same is true, of course, as to liabilities under (c). Such was the construction put upon a merger statute quite similar to ours in the recent case of Wisconsin Electric Power Co. v. Wisconsin Dept. of Taxation, 251 Wis. 346, 29 N. W. 2d 711. The merged corporation having succeeded to the rights of the original lessee by operation of law, it follows that there was no assignment within the prohibition of the covenant in question, and the trial court was correct in so holding.

## THE RENT CONTROVERSY

After the assignment controversy arose, Dodier and the merged corporation (hereinafter sometimes referred to as the Cardinals) entered into a stipulation dated March 30, 1949, providing that until the termination of litigation to resolve the assignment controversy, the merged corporation, or Cardinals, should continue to exercise and enjoy all of the rights and privileges granted the original lessee, and in the same manner and upon the same terms and conditions.

American League Baseball Company of St. Louis (hereinafter called the Browns) was also a tenant of the park under a lease from Dodier, by the terms of which the Browns were required to maintain the premises, with a provision that Dodier should reimburse them "for one-half of such cost and expenses or cause the same to be done." One of the obligations of the Cardinals under § 6 of the lease in question was that of reimbursing Dodier (upon monthly statements to be rendered by it) for one-half of the cost and expenses of maintenance, which Dodier had, in turn, agreed to pay or cause to be paid to the Browns.

In April, 1949, Dodier presented such a statement to the Cardinals showing the sum of $12,744.30 as the balance due by them on account of such maintenance cost and expenses. The Cardinals claimed they were entitled to a credit of $4767.68 because of the use at certain Negro exhibition games of the lighting system which was jointly owned by the Cardinals and the Browns. Dodier refused to recognize the validity of the claimed credit, and on May 9, 1949, served on defendant a notice of forfeiture. The Cardinals had 30 days in which to cure any such default, and so on May 10 they tendered to Dodier and the Browns the full amount due according to the aforesaid statement, except the item of $4767.68. Thereafter, on June 8, 1949, the Cardinals filed their counterclaim and paid the disputed sum of

$4767.68 into the registry of the court under the following [326] allegations:

"12. Defendant further states, however, that in view of the claim of forfeiture and so as to avoid irreparable damage to defendant, defendant hereby tenders into court the balance of $4,767.68 here in controversy so that if the court should determine that all or any part thereof is due and owing to plaintiff, or to said American League Baseball Company of St. Louis, the amount thereof may be paid to said American League Baseball Company of St. Louis."

The counterclaim prayed that the plaintiff be enjoined from asserting any forfeiture of the lease; that title be quieted in the merged corporation as lessee under the lease, and for other relief.

The decree ordered and adjudged that the clerk pay over to the plaintiff the disputed sum of $4767.68 theretofore deposited in the registry of the court, "but that such payment shall be without prejudice in any way to the right of defendant St. Louis National Baseball Club, Inc., to assert in any other litigation it may determine to bring, any claims not specifically adjudicated herein, which it may have against either the plaintiff or the cross-defendant American League Baseball Company of St. Louis on account of the profits of the exhibition games played on said premises during 1948 including the profits from the 'concession business' in connection with the said exhibition games, and including the division of profits from any exhibition games which were played after the 1948 season, or may be hereafter played, and the 'concession business' in connection therewith, or any claims it may have for the reasonable value of said St. Louis National Baseball Club, Inc.'s, interest in the lights and lighting system, turnstiles, cushions and whatever other equipment of any kind is used in connection with the operation of Sportsman's Park, and which may have been furnished or is now owned by said St. Louis National Baseball Club, Inc., in conjunction with American League Baseball Company of St. Louis." The decree further ordered and adjudged the declaration of forfeiture in question to be void and of no effect; enjoined plaintiff from asserting any forfeiture of the lease on account of said declaration, or otherwise interfering with defendant's possession under said lease; adjudged the same to be in full force and effect, and defendant to be entitled to all of the rights of lessee thereunder.

Plaintiff and the cross-defendant on the counterclaim did not file a motion for new trial, but did file a motion to amend the judgment and opinion "in the following respects and for the reasons set out:

"1. To render judgment in favor of the plaintiff and cross-defendant on the counterclaim because the findings thereon compel such judgment under the law.

"2. To delete from the finding that plaintiff was on June 8, 1949, and still is, entitled to the disputed $4767.68, the declaration that this finding is without prejudice to the right of defendant to bring another action to relitigate this question, because under the findings and the law this declaration is illegal and violative of the Code of Civil Procedure, Sections 10 and 14 of Article I of the Constitution of Missouri, and Amendment XIV of the Constitution of the United States.

"3. To delete from the judgment and opinion (a) the order that the notice or declaration of forfeiture dated May 9, 1949, is void, (b) the injunction against asserting a forfeiture under such notice, and (c) the declaration that the lease is in full force and effect and defendant entitled to the rights of the lessee thereunder, because under the findings and the law these orders, injunctions and declarations are illegal and violative of the Code of Civil Procedure, and Sections 10 and 14 of Article I of the Constitution of Missouri, and Article I, Section 10, Clause 1, and Amendment XIV of the Constitution of the United States."

It is obvious that appellants' motion to amend accepts the findings of the court as correct, and seeks amendment of the decree solely on the basis that such findings compel it. No question arises as to the jurisdiction of the court over the subject matter, nor as to the sufficiency of the counterclaim to state a claim upon which relief can be granted, and so because not [327] presented to or expressly decided by the trial court, as required by § 140 (a) of the Civil Code, Laws 1943, p. 353, § 512.160 (1), RSMo 1949, we do not consider such assignments appearing in appellants' brief as that the respondent could have paid under protest the account demanded within the grace period and sued for recovery for the payment on the ground of duress, and so must suffer the consequences of its refusal to fulfill its contract; and that respondent's payment into court was for its own use and benefit, was conditioned upon a successful defense of the counterclaim, and did not constitute a tender, etc. With those matters eliminated, the whole burden of plaintiff's complaint is that the court "having found that plaintiff was entitled to the payment withheld, the counterclaim should have been dismissed." But this contention disregards the conditional nature of such award, and fails to take into account the controlling effect of still another finding made in that same connection, all of which appears in § 8 of the decree, as follows:

"The Court finds that under the pleadings and the proof it is not able to adjudicate what part of said sum of $4,767.68 defendant St. Louis National Baseball Club, Inc., is entitled to receive, and that said question may, without prejudice to the rights of said St. Louis National Baseball Club, Inc., be adjudicated in a new suit or by amendment of the pleadings in this cause and

further proof on the questions involved. But the Court further finds that plaintiff has no right to declare a forfeiture on account of the facts and circumstances presented on the counterclaim and that said defendant St. Louis National Baseball Club, Inc., has demonstrated its good faith in asserting its claims as hereinabove set forth by paying the disputed sum into the registry of this Court and by making such payment within the time prescribed in the notice of forfeiture and therefore plaintiff is not entitled to declare any forfeiture of said lease on account of the facts and circumstances hereinabove set forth. And the Court further finds that defendant St. Louis National Baseball Club, Inc., having indicated to the Court its intention not to amend its pleadings herein or to offer further proof herein, but that it intends to further litigate the questions involved in the counterclaim in a separate proceeding, and the Court finds that plaintiff is entitled to receive the said sum of $4,767.68 heretofore paid into the registry of this Court, but without prejudice to the right of said St. Louis National Baseball Club, Inc., to litigate such questions in another proceeding.''

Under the form of review, as cast by the motion to modify, the express finding of the court that, under the pleadings and the proof, it was unable to adjudicate what part of the disputed sum of $4767.68 the *defendant* was entitled to receive, and that Dodier had no right to declare the forfeiture, is binding. This necessarily disposes of the same objection as affecting the ''without prejudice'' provisions of the decree awarding the disputed fund to Dodier, as well as to the granting of the injunction, and other features of the relief granted.

The judgment is affirmed. All concur.