**NATIONAL DAIRY PRODUCTS CORPORATION, a Corporation, Plaintiff-Respondent,**

v.

**Milton D. CARPENTER, Director of Revenue, State of Missouri, Defendant-Appellant.**

**No. 47406.**

Supreme Court of Missouri,

Division No. 1.

July 13, 1959.

John M. Dalton, Atty. Gen., James E. Conway, Asst. Atty. Gen., for appellant.

Lashly, Lashly & Miller, John H. Lashly, Paul B. Rava, St. Louis, for respondent.

WESTHUES, Judge.

Plaintiff National Dairy Products Corporation, a Delaware corporation, filed a petition in the Cole County Circuit Court to determine whether it was liable to pay a sales or use tax under the provisions of Sec. 144.440, RSMo Cum.Supp.1957, V.A.M.S. The transaction which caused this controversy was the merger of three Delaware corporations into the parent company, the plaintiff in this case. After the merger, plaintiff applied for the issuance of certificates of title and registration in its own name on motor vehicles previously registered in the names of the three corporations. The number of motor vehicles, their makes, and serial numbers were filed with the petition in three separate exhibits referred to as Schedules A, B, and C. The defendant refused to comply with the request unless plaintiff paid a tax of 2%. This suit followed.

Defendant answered and admitted all allegations of the petition but denied the legal conclusions pleaded with regard to the effect of the merger. Plaintiff filed a motion for judgment on the pleadings. The defendant filed a motion to dismiss plaintiff's petition for failure to state a claim upon which relief could be granted. The trial court entered a decree in plaintiff's favor and ordered defendant to issue the certificates of title and registration as requested without requiring the payment of 2% as a sales or use tax. From the judgment entered, defendant appealed.

The ultimate facts pleaded, upon which the question presented depends, were con-

cisely stated in defendant's brief which we adopt as the statement of facts of the case: "This case is one which arises on the sufficiency of the pleadings. The appellant maintains that the pleadings are insufficient to state a cause of action. The respondent received from the court a judgment on the pleadings in *his* (its) favor. Because of this the facts to be considered are contained in the respondent's pleadings.

"Respondent, in *his* (its) pleading, made the following allegations. Respondent is a Delaware corporation duly licensed and authorized to transact business in Missouri. Prior to December 31, 1956, the respondent had three wholly-owned subsidiary companies which engaged in the processing, selling, and distribution of dairy products in the States of Missouri and Illinois. The subsidiary companies were the St. Louis Dairy Company, the Chapman Dairy Company and the Franklin Ice Cream Company. These subsidiaries were all Delaware corporations all authorized to transact business in Missouri. Each of them owned motor vehicles which were titled in the name of the subsidiary prior to December 31, 1956. Sales or use taxes as the case required had been paid by each of the subsidiaries on the original acquisition of the motor vehicles involved and all personal property taxes for the year 1956 owed by the three subsidiary companies had been fully paid. The subsidiary companies had certificates of title on the vehicles in question evidencing the aforementioned payment upon original acquisition. On January 1, 1957, the National Dairy Products merged the three wholly-owned subsidiary corporations into the National Dairy Products Corporation. (u)Under the provisions of the Delaware Corporate Code, Title 8, Chapter 1, Section 253. The National Dairy Products Corporation then took over the operation of the subsidiary corporations and distributed dairy products in the same manner as the subsidiaries had done. On January 15, 1957, the National Dairy Products Corporation applied to the Director of Revenue for issuance of titles to the

vehicles on Schedules A, B and C all of which had been previously owned by one of the merged subsidiary corporations. National Dairy Products Corporation applied for title to these vehicles in their own name. Tender was made of the certificate of title previously issued to the subsidiary corporations. The applications were tendered in proper form and the statutory fees were also tendered. The receipts of personal property tax for all subsidiaries marked paid in full were exhibited but National Dairy Products made no tender of or offer to pay any use tax on this transaction. Whereupon the Director of Revenue refused to issue these titles on the ground that National Dairy Products Corporation had incurred a use tax liability in the amount of two per cent (2%) of the purchase price as a result of the transfer."

■ The question is whether the plaintiff corporation was required to pay a 2% tax under Sec. 144.440, supra, which reads as follows: "1. In addition to all other taxes now or hereafter levied and imposed upon every person for the privilege of using the highways of this state, there is hereby levied and imposed a tax equivalent to two per cent of the purchase price, as defined in section 144.070, which is paid or charged on new and used motor vehicles purchased or acquired for use on the highways of this state which are required to be registered under the laws of the state of Missouri.

"2. That at the time the owner of any such motor vehicle makes application to the director of revenue for an official certificate of title and the registration of the same as otherwise provided by law, he shall present to the director of revenue, evidence satisfactory to said director showing the purchase price paid by or charged to the applicant in the acquisition of said motor vehicle, or that said motor vehicle is not subject to the tax herein provided and, if said motor vehicle is subject to the tax herein provided, such applicant shall pay or cause to be paid to the director of revenue the tax provided herein.

"3. In the event that the purchase price is unknown or undisclosed or that the evidence thereof is not satisfactory to the director of revenue, the same shall be fixed by appraisement by the director.

"4. No certificate of title shall be issued for such motor vehicle unless said tax for the privilege of using the highways of this state has been paid."

The plaintiff, in its brief, says, "The vesting of the ownership of the motor vehicles in respondent by operation of law is not a purchase within the meaning and effect of the Missouri Use Tax Statutes."

The defendant says, in his brief, "A merger of wholly-owned subsidiary corporations into the parent corporation and the resultant transfer in ownership of motor vehicles owned by the subsidiary is for 'purchase price' within the meaning of the use tax law."

Plaintiff and defendant each contend, and we agree, that the law of Delaware should govern the question of the effect of the merger as regards the transfer of title to the motor vehicles owned by the merged corporation. Both parties cited Aspinook Corporation, etc. v. Commissioner of Corporations and Taxation, 326 Mass. 327, 94 N.E.2d 366, which so holds.

■ In the determination of the question of whether Section 144.440, supra, requires a payment of a tax of 2% on the transaction involved in this case, the statute being a tax law must be strictly construed against the taxing authority. In re Gerling's Estate, Mo., 303 S.W.2d 915, loc. cit. 919(3). Note what the court there said: "If the right to tax is not plainly conferred by the statute, it is not to be extended by implication." Turning now to the statute, we find that the tax of 2% must be computed on the "purchase price" of the motor vehicles involved in the transaction. The words "purchase price" may be found in each of the first three subsections of Sec. 144.440, supra. The words "purchase price" imply a sale or a contract of exchange.

The purchase price is the consideration paid for an object involved in a sale. South Texas Lumber Co. v. Epps, 48 Okl. 372, 150 P. 164, loc. cit. 165(3); Byrd v. Babin, 196 La. 902, 200 So. 294, loc. cit. 300(8); Embden State Bank v. Boyle, 50 N.D. 573, 196 N.W. 820.

In paragraph 2 of Sec. 144.070, RSMo Cum.Supp.1957, V.A.M.S. "purchase price" is defined as follows: "As used above, the term purchase price shall mean the total amount of the contract price agreed upon between the seller and the applicant in the acquisition of said motor vehicle, regardless of the medium of payment therefor." As we understand that definition, it means that the tax levied by Sec. 144.440, supra, applies to all transactions where a motor vehicle is the subject of an exchange or sale contract. There must be a seller and a buyer.

■ Can it be said that when the merger of the corporations, above mentioned, took place that there was a sale, a purchase price, a seller, or a buyer? The adjudicated cases say, "No." The transfer of property in a merger of two or more corporations comes about by operation of law and not through a contract of sale. There is, strictly speaking, no purchase price. In the case of United States v. Seattle-First National Bank, 321 U.S. 583, 64 S.Ct. 713, 714, 88 L.Ed. 944, the U. S. Supreme Court had before it the question of whether, upon a merger of two banks, a stamp tax was required to be paid on real estate owned by one of the merged banks which real estate, after the merger, was the property of the surviving corporation. The U. S. Supreme Court held that the transfer was wholly by operation of law notwithstanding that a consolidation agreement provided that all assets of each bank " 'shall pass to and vest in the consolidated association.' "

Title 8, Chapter 1, Sec. 253 subsection b, of the Delaware Code 1953, provides that upon the recording of a certificate of consolidation "all of the estate, property,

rights, privileges and franchises of such other corporation shall vest in and be held and enjoyed by such parent corporation as fully and entirely and without change or diminution as the same were before held and enjoyed by such other corporation, * * *." That part of the Delaware Corporation Code is substantially the same as the 12 U.S.C.A. § 34a, Sec. 3 of the National Banking Act quoted in the United States v. Seattle-First National Bank case, supra (64 S.Ct. loc. cit. 716).

The general rule seems to be that when two or more corporations merge, the property of the corporations by operation of law is vested in the survivor company. In such a case, there is no sale of the property but a transfer by operation of law. See Aspinook Corporation, etc. v. Commissioner of Corporations and Taxation, supra; McCarthy v. Osborn, 223 La. 305, 65 So.2d 776; Wisconsin Electric Power Co. v. Wisconsin Dept. of Taxation, 251 Wis. 346, 29 N.W.2d 711, loc. cit. 715, 716(6, 7). See also 27 Words and Phrases p. 125, Merger (Corporations), and cases there cited. The ruling by our court en banc in the case of Dodier Realty & Investment Co. v. St. Louis National Baseball Club, 361 Mo. 981, 238 S.W.2d 321, 24 A.L.R.2d 683, is in harmony with the general rule above stated. In that case, two Missouri corporations merged and the name of the surviving corporation was changed. A lessor contended that there had been an assignment of a lease by the lessee in violation of the terms of the lease. This court held there was no assignment. Note what this court there said, 238 S.W.2d loc. cit. 325 (4): "It will be recalled that § 70 provides in (a) that 'The several corporations parties to the plan of merger * * * shall be a single corporation'—that one 'designated in the plan of merger as the surviving corporation'; and in (b) that 'The separate existence of all corporations parties to the plan of merger * * *, except the surviving * * * corporation, shall cease.' We think these provisions are to

be construed as working a dissolution of the merging corporation, and we so hold. Such consequence is solely by force of the statute, and hence by operation of law. By the same token, it must be held that the transfer of assets, as an incident of the merger, is effectuated under and by force of the statute itself * * *."

It is our opinion that the transaction in question, that is, the acquisition of the motor vehicles by the plaintiff through the merger of the three corporations unto itself, was not a transfer taxable under the provisions of Sec. 144.440, supra. There was no purchase price or contract of sale involved.

The defendant relies upon Sec. 144.450, RSMo Cum.Supp.1957, V.A.M.S., which section exempts certain purchases of motor vehicles from the tax imposed by Sec. 144.440 such as sales to the State or to religious organizations. It also exempts motor vehicles "acquired by * * * gift or under a will or by inheritance," where the donor or decedent had paid the tax thereon. This exemption section does not aid the defendant's contention for the reason that Sec. 144.440 specifically provides that the tax shall be calculated on the amount of the purchase price. Since in the merger of the corporations involved in this case there was no purchase price, no tax was due the State. The defendant also cited State ex rel. Transport Mfg. & Equipment Co. v. Bates, 359 Mo. 1002, 224 S.W.2d 996. No question now before us was involved in that case. This court held a statute unconstitutional because it exempted certain motor vehicles from a tax. It was held that the statute did not impose a uniform tax on a class of motor vehicles. In other words, there was an arbitrary classification set up by the statute. There is no arbitrary classification in Sec. 144.440 and our ruling in this case does not create such. The tax on the sale of motor vehicles in question was paid when purchased. The acquisition of the motor vehicles by the

merger was a transaction not covered by the statute.

We rule the trial court's judgment was correct and it is hereby affirmed.

All concur.