**Donald T. KANEFIELD, Appellant,**

v.

**SP DISTRIBUTING COMPANY, L.L.C., Respondent.**

No. ED 75676.

Missouri Court of Appeals, Eastern District, Division One.

Feb. 15, 2000.

Goffstein, Raskas, Pomerantz, Kraus, Sherman, Ruthmeyer & Susman, L.L.C., Jerome F. Raskas, Peter H. Love, St. Louis, for appellant.

Rosenblum, Goldenhersh, Silverstein & Zafft, P.C., Richard E. Greenberg, Sanford J. Boxerman, Clayton, for respondent.

GARY M. GAERTNER, Presiding Judge.

Appellant, Donald T. Kanefield, ("plaintiff"), appeals the judgment of the Circuit Court of St. Louis County, granting SP Distributing Company's, ("defendant"), motion to dismiss plaintiff's claims for a declaratory judgment regarding an alleged agreement between the parties, breach of contract, fraudulent conveyance and an equitable lien and denying his request for leave to amend pleadings. We affirm in part and reverse and remand in part.

On October 1, 1974, Irvin Katz ("Katz"), owner of "SP Distributing Company", ("company"), entered into a written agreement with plaintiff, an employee of the company. Katz provided in the agreement that if he ever sold his business, he would give plaintiff 10% of the net proceeds in kind provided plaintiff was employed by the company at the time, and that he

would give any covenant necessary and required to sell the business.[1] The agreement further provided:

> I (Katz) agree that I will not terminate your (plaintiff) employment merely to subtrovert your interests created herein, however, this shall not be construed as any restriction upon my right to terminate your employment. I further provide that regardless of whether or not you are working for me at the time of any sale, five (5) percent of the net proceeds are now vested in you and for each year that you continue to work for me, up to a maximum of 10 more years, an additional one-half of one (1) percent will be vested so that after ten years from date, if you have been continually employed, you will be entitled to ten (10) percent of the net proceeds of any sale in kind, regardless of whether or not you are employed by me at the time of the sale.

In addition, the agreement provides:

> 2. I have also indicated that I would give you the right (at your option) to participate with me on a 50–50 basis on any new and different business ventures which I might undertake, as we might agree upon in the future, Providing:
>
> (a) You are employed by me and afterwards if the business is sold or your employment is terminated by mutual consent for any other reason, and
>
> (b) All capital contributions shall be made equally.

Katz died on or about January 30, 1986. After Katz's death, the company began operating as a partnership by Toby Katz, Katz's surviving spouse ("wife"). Wife operated the partnership in dual capacities, as both the surviving spouse and as trustee of the Irvin Katz Family Fund.[2] Plain-

---

1. In 1981, the agreement was amended to increase the 10% to 25% of the net proceeds in kind.

2. A trust that Katz had set up prior to his death.

tiff, in his first amended petition, alleged that wife in her two capacities prevailed on him to remain an employee of the partnership and as an inducement ratified and reaffirmed the prior agreement with Katz. Plaintiff also alleged that from 1986 to 1995, wife split the partnership's profits with him on a fifty percent to fifty percent basis and they both reinvested the shared profits in additional equipment and expansion of the partnership business.

In 1991, Richard Katz, one of Katz's sons, began working for the partnership. In 1993, Lawrence Katz, another son of Katz, began working for the partnership. In April, 1997, wife transferred to Richard Katz and Lawrence Katz, a portion of her interests in the partnership. In May, 1997, the partners converted the business into a limited liability company known as "SP Distributing, L.L.C", ("SP Distributing"). On March 1, 1998, SP Distributing terminated plaintiff's employment.

On March 9, 1998, plaintiff filed his original petition against SP Distributing seeking declaratory judgment, money damages for breach of contract and imposition of equitable lien. Plaintiff amended his petition joining SP Distributing owners as additional defendants to the lawsuit. The first amended petition asserted the same causes of action but added a count of "fraudulent conveyance." On December 4, 1998, defendants moved to dismiss the first amended petition. On December 31, 1998, the trial court sustained defendants' motion to dismiss without giving its reasons. Plaintiff's subsequent motion to reconsider or, in the alternative, motion to file second amended petition was denied. Plaintiff appeals.

Plaintiff raises five points on appeal. Plaintiff argues that the trial court erred in: (1) dismissing count I of his first amended petition which sought a declaratory judgment regarding Katz's agreement with him because the trial court erroneously applied *Vernon v. Schuster,* 179 Ill.2d 338, 228 Ill.Dec. 195, 688 N.E.2d 1172 (1997) to this case; (2) dismissing count II

of his first amended petition which alleged three theories of breach of contract because the trial court erroneously applied *National Dairy Products Corp. v. Carpenter,* 326 S.W.2d 87 (Mo.1959); (3) dismissing count III of his first amended petition which alleged fraudulent conveyance because the count states claims upon which relief can be granted; (4) dismissing count IV of his first amended petition which alleged equitable lien because the count states claims upon which relief can be granted; and (5) denying him leave to file his second amended petition.

■ Appellate review of grant of motion to dismiss is essentially de novo. *Jordan v. Willens,* 937 S.W.2d 291, 293 (Mo. App. W.D.1996). Appellate courts review trial court's dismissal of a petition by ascertaining whether the facts pleaded and reasonable inferences drawn therefrom provide any basis for relief. *Wheelehan v. Dueker,* 996 S.W.2d 780, 781 (Mo.App. E.D.1999). "We treat all facts alleged as true and construe allegations liberally and favorably to the plaintiff." *Id.* "When the trial court fails to specify its reasons for dismissing the petition, we presume the trial court acted for one of the reasons stated in the motion to dismiss." *Shores v. Express Lending Services, Inc.,* 998 S.W.2d 122, 125 (Mo.App. E.D.1999).

■ In his first point, plaintiff argues that the trial court erred in dismissing count I of his first amended petition because the trial court erroneously applied Illinois law. He argues the petition states a claim because the petition and reasonable inferences drawn therefrom support an agreement independent of successor liability, the successor's express assumption of the agreement, the successor's continuation of the business, and his vested rights in the successor business. We agree.

In count I of the plaintiff's amended petition, he asked for a declaratory judgment with regard to the agreement he made with SP Distributing. The defendants moved to dismiss this count by argu-

ing that count I failed to state a claim because it alleges only a personal agreement of Katz, which terminated upon his death and did not bind subsequent owners of the business. They cited *Vernon v. Schuster*, 179 Ill.2d 338, 228 Ill.Dec. 195, 688 N.E.2d 1172 (1997), as authority. The trial court sustained the motion without an explanation to its reasons. We assume, therefore, the trial court based its decision on defendants' reason set forth above.

In *Vernon*, plaintiffs contracted with Diversey Heating and Plumbing ("Diversey Heating") to replace the boiler in their building. *Id.* 228 Ill.Dec. 195, at 1174. James Schuster was a sole proprietor doing business as Diversey Heating. *Id.* Diversey Heating warranted portions of the boiler against cracking for 10 years. *Id.* Plaintiffs paid Diversey Heating to inspect and service the boiler annually from 1990 to 1992. *Id.* In September or October 1993, plaintiff Baker and James Schuster agreed that Diversey Heating would perform preseason service on the boiler. *Id.* On October 20, 1993, James Schuster died and Diversey Heating then became a sole proprietorship owned and operated by defendant, Jerry Schuster, James Schuster's son. *Id.* In late or early November 1993, plaintiff Vernon asked Diversey Heating whether it had performed the preseason service on the boiler. *Id.* Defendant informed plaintiffs of his father's death and told plaintiff Vernon that Diversey Heating had not performed the service yet but that it would service the boiler immediately. *Id.* In February 1994, the boiler stopped heating and defendant denied any responsibility for the warranty or failure of the boiler. *Id.*

Plaintiffs filed a four-count complaint. Count I alleged Diversey Heating was negligent in installing and servicing the boiler and instructing the plaintiffs on caring for the boiler. *Id.* Count II alleged the defendant's promise in late October or early November 1993 to service the boiler was

the basis of a contract, and defendant breached that contract. *Id.* Count III alleged Diversey Heating breached its warranty on the boiler. *Id.* Count IV alleged Diversey Heating breached its contract to install and service the boiler properly. *Id.* The trial court dismissed counts I, III, and IV and limited count II "to events occurring after the death of James Schuster on October 20, 1993." *Id.* 228 Ill.Dec. 195, at 1174–75. Plaintiffs appealed the dismissal of counts III and IV.

The court stated that the "well-settled general rule is that a corporation is not liable for the debts or liabilities of the transferor corporation." *Id.* 228 Ill.Dec. 195, at 1175–76. The court also noted four exceptions to this rule: "(1) where there is an express or implied agreement of assumption; (2) where the transaction amounts to a consolidation or merger of the purchaser or seller corporation; (3) where the purchaser is merely a continuation of the seller; or (4) where the transaction is for the fraudulent purpose of escaping liability for the seller's obligations." *Id.*[3] Addressing only the third exception, the court concluded that defendant could not be held liable under the continuation exception to the general rule of successor nonliability. *Id.* 228 Ill.Dec. 195, at 1177.

*Vernon*, is not dispositive of the case at bar. Count I pleads, among other things, that plaintiff entered into an agreement with wife after Katz's death. Plaintiff alleged that the agreement incorporated the terms of his prior agreement with SP Distributing. The petition alleges facts, which could either be a claim for contract with the SP Distributing similar to count II of *Vernon*, or fall under one of the exceptions of the general rule of successor liability. Thus, the trial court erred in dismissing count I of the plaintiff's first amended petition.

■ In his second point, plaintiff argues the trial court erred in dismissing count II

---

3. This general rule and exceptions are applicable in Missouri. *See Flotte v. United*

*Claims, Inc.,* 657 S.W.2d 387, 388 (Mo.App. E.D.1983).

of his first amended petition because the trial court erroneously applied *National Dairy Products Corporation v. Carpenter*, 326 S.W.2d 87 (Mo.1959) to the facts of this case. Plaintiff argues the petition and reasonable inferences drawn therefrom support three theories of breach of contract to which *National Dairy Products* does not apply.

In count II of plaintiff's first amended petition, he alleged three breaches of contract: 1) defendants' termination of his employment in violation of the terms of the contract; 2) defendants' breach of the agreement to pay him his share of the net proceeds in kind of the sale of the business; and 3) defendants' repudiation of the agreement and offer of the business for further sale. Defendants in their motion to dismiss stated:

> As a matter of law, the conversion of a partnership to a limited liability- company by operation of law pursuant to Mo. Rev.Stat. Section 347.125 does not constitute a sale for purposes of the Agreement. *See National Dairy Products Corp. v. Carpenter*, 231[326] S.W.2d 87, 90 (Mo.1959).

The trial court dismissed count II of plaintiff's amended petition without giving reasons for its dismissal.

In *National Dairy Products*, plaintiff, National Dairy Products Corporation, merged its three subsidiary corporations into the parent corporation. *Id.* After, the merger, plaintiff applied for the issuance of certificates of title and registration in its own name on vehicles previously registered in the names of the three corporations. *Id.* The Department of Revenue refused to grant plaintiff's request unless plaintiff paid a tax of 2%. *Id.* Plaintiff sued and the Supreme Court held that the transfer of the vehicles to the parent company through the merger was not a transfer taxable under the statute imposing a 2% tax on the purchase price of new and used vehicles. *Id.* at 91–92.

*National Dairy Products* is not dispositive of count II of plaintiff's amended petition. The only issue that *National Dairy Products* and defendants' motion to dismiss seem to address is whether the incorporation of the partnership was a sale of the business, which pertains to the second allegation of the breach of contract. Defendants' motion did not adequately address plaintiff's three allegations of breach of contract, any of which could entitle plaintiff to relief if proven. For instance, our review of the record reveals a factual dispute as to defendant's termination of plaintiff, i.e., whether it was in violation of the terms of the agreement. Thus, the trial court erred in dismissing plaintiff's count II of the first amended petition.

■ In his third point, plaintiff argues the trial court erred in dismissing count III of his first amended petition because count III and the reasonable inferences drawn therefrom invoke substantive principles of law entitling him to relief for fraudulent conveyance. Plaintiff argues that section 428.020, RSMo 1994,[4] is applicable to this case. We disagree.

In his first amended petition, plaintiff alleged that wife's transfer of partnership assets to Richard Katz and Lawrence Katz and the partners' transfer of the partnership assets to the limited liability company, were fraudulent conveyances to render SP Distributing insolvent and incapable of performing the agreement between them.

■ "To establish a cause of action under section 428.020, the creditor must show a conveyance by the debtor for the purpose of putting his assets beyond the reach of the creditor." *Campbell v. Rickert*, 938 S.W.2d 282, 286 (Mo.App. S.D. 1997). The creditor has the burden of proof. *Id.*

Plaintiff's allegations in count III are insufficient to enable him to recover on a theory of fraudulent conveyance pursuant to section 428.020. Wife's transfer of por-

---

4. All statutory references are to RSMo 1994, unless otherwise indicated.

tions of partnership interests and assets to her children merely added two additional partners to SP Distributing. With regard to the incorporation of the partnership, section 347.125 provides:

> When a general partnership or limited partnership is converted to a limited liability company pursuant to this section, all duties, debts, liens, liabilities and rights of creditors as against the former partnership and its partners shall continue without impairment and shall attach to the limited liability company. Any existing claim, action or proceeding pending by or against the partnership or its partners may be prosecuted to judgment as if the conversion had not taken place, or against the limited liability company to the same extent as if such duties, debts, liens and liabilities had been incurred or contracted by it. A judgment against the partnership constitutes a lien against the limited liability company and may be enforced against the limited liability company.

The transfers did not change plaintiff's rights against SP Distributing. Plaintiff's allegations failed to demonstrate that SP Distributing's assets were placed beyond his reach, should he be successful in his suit. Thus, the trial court did not err in dismissing count III of plaintiff's first amended petition.

■ In his fourth point, plaintiff argues the trial court erred in dismissing count IV of his first amended petition because count IV and inferences drawn therefrom entitle him to relief in the form of equitable lien.

■ "The necessary requirements of an equitable lien are: 1) a duty or obligation owed by one person to another; 2) a res to which that obligation fastens and which can be identified; and 3) an intent, express or implied, that the property serve as security for the payment of the debt or obligation." *Fredco Realty, Inc. v. Jones*, 906 S.W.2d 818, 822 (Mo.App. E.D.1995). Plaintiff argues that he alleged facts which

satisfies these three requirements. He states:

> The obligation in this case is SP Distributing's obligation to pay [him] his percentage of the net proceeds "in kind" from the sale of the business. The res to which the lien attaches is the proceeds "in kind" from the sale of the business itself – the membership interests in the limited liability company exchanged for the SP partners' interests in the partnership. The agreement's obvious intention is that the proceeds "in kind" of the sale of SP Distributing are the security for the obligation to pay [him] his percentage of the net proceeds "in kind" of the sale.

We believe that the above allegation states a cause of action, alleging sufficient facts which we treat as true for purpose of the motion to dismiss, necessary to state an equitable lien cause of action. Thus, the trial court erred in dismissing count IV of plaintiff's first amended petition.

■ In his final point, plaintiff argues the trial court erred in denying him leave to file his second amended petition because the trial court abused its discretion. He argues the trial court violated Supreme Court rules 55.33 and 67.06.

■ Rule 55.33(a) provides that leave to amend shall be freely given when justice so requires. Rule 67.06 provides that on sustaining a motion to dismiss a claim, the court shall freely grant leave to amend and shall specify the time within which the amendment shall be made or amended pleading filed. However, "a party does not have an absolute right to file an amended petition." *Bratt v. Cohn*, 969 S.W.2d 277, 284 (Mo.App. W.D.1998). The trial court's denial of leave to amend is presumed correct and the burden is on the proponent to demonstrate that the trial court clearly and palpably abused its discretion. *Vickers v. Progressive Cas. Ins. Co.*, 979 S.W.2d 200, 205 (Mo.App. E.D. 1998). The trial court abuses its discretion when its ruling is "so arbitrary and unreasonable as to shock the sense of justice

and indicate a lack of careful consideration." *Id.* The courts look at the following criteria in determining whether leave should be granted: "1) reasons for the moving party's failure to include the matter in the original proceedings; 2) any prejudice to the non-moving party; and 3) hardship to the party requesting amendment if the request is denied." *Wheelehan,* 996 S.W.2d at 782.

The proposed second amended petition just added an alternate count of promissory estoppel. The alternate theory was based on the same set of facts as in the first amended petition and did not present any new facts or circumstances. Plaintiff, in the proposed second amended petition did not present the trial court with reasons why this theory of promissory estoppel could not have been raised earlier. We do not find the trial court's ruling denying the request for leave to amend petition was so arbitrary and unreasonable as to shock the sense of justice. Thus, the trial court did not abuse its discretion when it denied plaintiff's request for leave to amend his petition.

Based on the foregoing, the judgment is affirmed in part and reversed and remanded in part for trial.

PAUL J. SIMON, J., and JAMES R. DOWD, J., concur.