TAYLOR Appellant, v. CITY OF CARONDELET, Respondent.

1. The trustees of the town of Carondelet were empowered, by the act of February 6, 1839, (Sess. Acts, p. 210,) to grant leases of the land belonging to the corporation, and were clothed with "all the power and authority necessary to carry into effect the objects of the act, and to do all acts that

might be proper for that purpose ;" *held*, that under this act the trustees of the town might, in accordance with a town ordinance to that effect, make leases containing a clause of forfeiture for nonpayment of rent reserved, and that such forfeiture, when declared in proper form, could not be relieved against, although no demand of rent had been previously made. The corporation, in its political capacity, having required the insertion in the lease of the clause of forfeiture, it is as though it had been done by the legislature. (LEONARD, J., dissenting.)

## *Appeal from St. Louis Land Court.*

The incorporated town of Carondelet was proprietor of a large tract of land, consisting of several thousand acres, granted to the inhabitants as a common in Spanish times, and confirmed to them by the United States. The general assembly of this state by act of February 6, 1839, (Sess. Acts, p. 210,) empowered the trustees of the town to grant leases of this land, renewable forever, reserving rents. The board of trustees was by this act clothed with "all the power and authority necessary to carry into effect the objects of the act, and to do all acts that might be proper for that purpose." On the 12th day of January, 1845, the trustees of Carondelet passed town ordinance No. 78, directing a sale of lots in survey No. 3, and that the purchaser should pay two per cent. on the amount bid, as an annual rent for ninety-nine years, and four per cent. forever afterwards. The fifth and sixth sections of this ordinance are as follows: "Sec. 5. The leases shall contain a provision to the following effect, viz : That, should the rent reserved as aforesaid, or any part thereof, on any lease, remain unpaid for six months after the same shall become due, the board of trustees may, by resolution, declare such lease terminated and void, and the same shall expire and be determined from that day." "Sec. 6. The leases provided for in this ordinance are to contain all the conditions and provisions which the board of trustees may think necessary, to secure the rent as aforesaid." Under this ordinance, the trustees leased to one Burnet lot 72, in survey 3, containing about ten acres, at the yearly rent of four dollars and ninety-nine cents, payable on the 4th of

April. This lease expressly referred to the town ordinances, and contained the following clause : " And it is further covenanted and agreed by and between the parties aforesaid, that if at any time the rent aforesaid for six whole months shall be in arrear and unpaid, the said parties of the first part, or their successors in office, may terminate this lease by order or resolution, to be entered on record among the acts and proceedings of the said board, and may enter and take possession of the demised premises, free from any claim of the delinquent lessee, his executors, administrators or assigns." On the 15th of March, 1849, Bennet acquired the leasehold interest by mesne assignments under Burnet. On the 8th May, 1852, Bennet conveyed an undivided moiety to Camden. Neither Burnet nor any claiming under him ever made any improvements on the lot, nor did they even take actual possession ; it lay wholly unenclosed and unoccupied. In 1851, the town of Carondelet was erected into a city, with enlarged limits, embracing the leased premises. The powers of the old town trustees were vested in the new city council. The rent under the lease for the years 1850 and '51, was wholly unpaid. On the 10th July, 1852, the city council terminated the lease by resolution, in proper form. In the fall of 1852, Bennet and Camden applied to the city council to repeal the resolution, making, at the same time, a tender of the said rent, taxes with interest, and costs. The application was denied by the council. In this state of things, on the 17th day of January, 1853, and on the 2d March, 1853, Taylor, the plaintiff, became the purchaser of Bennet's and Camden's interest. He then commenced an action by petition in St. Louis Land Court, praying that the said resolution of forfeiture may be rescinded and annulled on the terms of his paying the back rents with interest and costs. The court below, upon the foregoing facts appearing on the trial, refused relief and dismissed the petition. The plaintiff has brought the case here by appeal.

*Reber* and *Carroll*, for appellant. 1. The indenture execu-ted to Burnet is a lease, and established the relation of landlord

and tenant, with all the incidental rights and duties; it was not a sale. See Sess. Acts, 1839, p. 210; Ordinance 78 (of Carondelet). 2. The plaintiff is entitled to the relief prayed, upon the well settled doctrine that courts of equity will relieve a tenant who has forfeited his estate by the nonpayment of rent at the appointed time. (2 Sto. Eq. p. 545; 2 Platt on Leases, 475, 477; Comyn's Land. & Ten., 4 vol. Law Lib. p. 322; 2 White's Lead. Cas. in Equity, 70 Law Lib., 458; Platt on Con. 253; Wadman v. Colcraft, 10 Ves. 67; Sanders v. Pope, 12 Ves. 289; Bowser v. Colley, 1 Hare, 126.) This relief is not granted on the ground of mistake, fraud or accident, but upon the broad equity that the tenant shall not suffer when he is willing and able to make the landlord whole. (2 Sto. Eq. p. 554; also 18 Ves. 58.) 3. The plaintiff then is entitled to relief unless his situation is different from that of ordinary tenants. The inhabitants of Carondelet were the absolute owners of their common. (Act of Cong. January 27, 1831.) The act of February 6, 1839, merely gave the power to lease, and did not prescribe the form of the leases. When the leases were made, their incidents and the rights of lessor and lessee were determinable by the nature of the contract and the general law of the land. The ordinances of Carondelet can not, in any just sense, be considered as statutes, having the power to impose forfeiture. They are no more than the powers of attorney of the inhabitants authorizing certain agents to lease lands belonging to them. The corporation, in leasing its land, is acting in a private proprietary character, and not in a public municipal capacity. See Major, &c., v. Bailey, 2 Denio, 433; Grant on Corp. 129.) 4. The corporation had no power to declare forfeitures without a legislative grant, given in express terms, or by necessary implication. (Cotter v. Doty, 5 Ohio, 393.) The power reserved in the fifth section of the ordinance, and inserted in the lease, is substantially nothing more than the common clause or proviso inserted in leases from time immemorial. 5. The effect of the proviso of forfeiture for nonpayment of rent is the same, whether the lease

is declared void or the landlord has simply the right of re-entry. (1 Hare, 109 ; 2 Platt on Leases, 327 ; 4 Cruise, 73, notes.) 6. The primary object of the clause of forfeiture was to enforce the payment of rent, not to terminate the contract. 7. A demand of rent was necessary. (12 Ohio, 212 ; 17 Pet. 267 ; 1 How. 216–17.) Although the king may not be bound to make demand of rent, corporations cannot claim that privilege. (Knight's case, 5 Coke, 57.)

*R. M. Field*, for respondent. No demand of the rent was necessary before terminating the lease by resolution of the council. The old rule of the common law undoubtedly was, that to enable the lessor to take advantage of a clause of re-entry for the nonpayment of rent, he must, on the day when the rent becomes payable, and at the uttermost convenient time before sunset of that day, make a formal demand of the rent at the most public place on the demised premises. (Co. Litt. 201. 1 Saund. 287, note.) It is conceived that in no case would this rule be adopted by the courts here, where the demised premises were actually vacant and unoccupied. But, however it might be in respect to individuals, the rule, it is believed, never had any application to leases by the officers of public municipal corporations, who are exercising the administrative powers of the government. Coke says that when the king makes a lease rendering rent, the place of payment is not the land, but the exchequer. (Co. Litt. *ubi supra*.) All cities and incorporated towns have public offices, at which the dues of the corporation are payable. 2. The plaintiff is entitled to no relief in equity. The general rule that equity will interfere and relieve against a forfeiture incurred by the nonpayment of rent, on the ground of accident or mistake, is admitted. See 2 Platt on Leases ; 2 Sto. Eq. 506. Some of the cases go so far as to say that equity will relieve where the nonpayment is wilful ; but it is believed that the general doctrine is that there should be some circumstance of accident, mistake or peculiar hardship to justify the action of the court. (Livingston v. Tompkins, 4 Johns. Ch. 447 ; Baxter v. Lansing,

8—VOL. XXII.

7 Paige, 350 ; Newman v. Rogers, 4 Bro. C. C. 393 ; Hill v. Barclay, 18 Ves. 60.) There is no circumstance of accident or hardship in this case. Besides, it is a settled rule, that no forfeiture incurred under the provisions of a public law can be relieved against in equity. (Peachy v. Somerset, 1 Strange, 447 ; Gorman v. Low, 2 Edward Ch. R. 324.) If the legislature had itself prescribed the terms of the leases, and when a forfeiture should be incurred, it would hardly have been contended by the plaintiff that the court could relieve in the face of an express statute. Substantially, however, that is the case now before the court. The legislature gave to the trustees of the town power to make leases and to expend the rents for municipal purposes ; and *" all the authority necessary to carry into effect the power granted, and to do all acts that might be proper for that purpose."* It will not be pretended that the fifth section of the ordinance passed by the trustees was not proper to effectuate the purposes of the act, or beyond the authority delegated by the legislature. This section, then, has all the force of a statute.

Upon the same principle, courts refuse to relieve against forfeitures incurred by the nonpayment of public dues. The principle has been applied to private corporation, where the object is of a public nature. The case of Sparks v. Liverpool Waterworks Co. 13 Ves. 434, is strikingly in point.

SCOTT, Judge delivered the opinion of the court.

In considering the question presented by this record, we must bear in mind that the respondent, the city of Carondelet, is a public municipal corporation. The power of the general assembly of this state to create such bodies is unquestioned, and the expediency of its exercise is admitted on all hands. The corporations thus established, have, within the sphere of their delegated powers, as absolute control as the general assembly would have, did it retain the delegated powers, and exercise them by its own laws. The act of the 6th February, 1839,

Taylor v. City of Carondelet.

empowered the trustees of the town of Carondelet and their successors, to grant leases of their commons, and they were endowed with the power and authority necessary to carry into effect the object of the act. This delegation of power substituted the trustees of the town of Carondelet for the general assembly, and, to the extent of the power delegated, vested them with the right to exercise that authority as effectually as it might have been exerted by the legislative power of the state. Prior to the execution, by the trustees of the town, of the lease of the commons which gave rise to this controversy, an ordinance was passed dated the 12th day of January, 1845, which contained this requirement : " The leases shall contain a provision to the following effect, viz : "That, should the rent reserved as aforesaid, or any part thereof, on any lease, remain unpaid for six months after the same shall become due, the board of trustees may, by resolution, declare such lease terminated and void, and the same shall expire and be determined from that day." The lease in controversy was made in pursuance to the terms of this ordinance. The corporation, in its political capacity, having required the insertion of the clause of forfeiture, it is as though it had been done by the legislature. Had the board of trustees, of their mere volition, leased their lands as any other proprietor might have done in the exercise of his ownership, the principle on which the plaintiff seeks relief might obtain. In such case, there might be no difference between the corporation and any private individual, and courts might exercise their equitable jurisdiction in suitable cases, in relieving against forfeitures as freely against the one as the other. The corporation having legislative power over the subject, the insertion of the clause of forfeiture, deriving its existence from legislation, is no violation of the law of the land, though it may be absolute ; for it is a principle, that a clause of forfeiture in a law is to be construed differently from a similar clause in a contract or engagement between individuals. A legislature can impose it as a punishment, but individuals can only make it a matter of contract. (3 Howard, 11) From the view we

take of the subject, the clause of forfeiture was as binding on the lessee as though it had been enacted by the general assembly. The legislature delegated its judicial powers over the matter to the corporation, and the corporation, within the sphere of its delegated power, could act as authoritatively in relation to it as the legislature. The law-making power, in fact, made the board of trustees a miniature general gssembly, and gave their ordinances, on this subject, the force of laws passed by the legislature of the state. In giving the corporation legislative powers on the subject of leases, the general assembly must have necessarily intended that its ordinances should operate as laws and not as contracts. The state of things presented by this record, shows the necessity for the power exercised by the corporation. If the common-law requisites to enforce a forfeiture were made necessary, no body would collect the rents for them. The amount due from each would be so small, and the tenants so numerous, that the rents would not defray the expenses of agencies. The principle that a corporation can not impose a forfeiture without express authority in its charter for that purpose, does not affect this controversy. Such principle seems only applicable to by-laws creating offences. Such by-laws, without the sanction of usage, or of an act of the legislature, can not create a forfeiture, to be levied by distress or sale of goods for their violation. (Kirk v. Nowil, 1 T. R. 118; Adley v. Reeves, 2 M. & Sel. 60.) They may impose a forfeiture for a violation of a by-law, but it can only be collected by an action of debt, unless the distress and sale are given. (Clark v. Tacket, 2 Ventris, 183.) This is the meaning of the saying, that a corporation can not impose a forfeiture without express authority.

Judge Ryland concurring, the judgment will be affirmed.

LEONARD, J. I do not concur in the opinion of the majority of the court. Here is a lease reserving a money rent, the payment of which the parties have secured by a provision in it to the effect that the lease shall cease upon the rents being six

Taylor v. City of Carondelet.

months in arrears, accompanied by a formal resolution of the board declaring the forfeiture; and the present application is for relief against this forfeiture.

Penalties are a common expedient, resorted to everywhere, to secure the performance of contracts, and are found annexed both to obligations for the payment of money, and also to obligations for the doing or forbearing of other acts. And it would seem that, in all civilized communities, it has been found necessary to lodge in some tribunal a power to mitigate them and reduce them to the actual or probable amount of the damage the party has sustained. (1 Bell's Com. Laws of Scotland, 656; 1 Pothier on Oblig. by Evans, 345.) In English jurisprudence this relief is afforded in equity, and the ground upon which it is there placed is, in the language of the chancellor, in Peachy v. Duke of Somerset, (1 Strange, 447, and 2 White's Lead. Cases in Equity, 448,) " from the original intent of the case, where the penalty is designed only to secure the money, and the court gives all that the party expected or desired." Accordingly, from an early period, equity relieved at any indefinite time against forfeitures incurred by the nonpayment of rent, upon the payment of principal, interest and costs, and this equity was recognized and regulated by the English legislature in the 4 Geo. ch. 28, and also by our own legislature, in a similar provision, to be found in the 20th section of the act concerning "Landlord and Tenant." To entitle the tenant to relief, he is not bound to account for his omission to pay at the appointed time, nor is he required to show any equitable circumstance giving him a title to the interference of the court, and we therefore can not withhold the relief here unless the present can be distinguished from ordinary cases of this kind.

It is to be remarked that the principle on this subject, applicable to cases of contract between party and party, is not applicable to penalties and forfeitures given by the statute or to conditions in law, and in the early case of Peachy against the Duke of Somerset, already referred to, the chancellor remarked

that "cases of *agreement* and *conditions of the party* and of the *law* are certainly to be distinguished," and on this ground he denied relief to a copy-holder, who had incurred a forfeiture of his copy-hold by making leases, &c., contrary to the custom of the manor. When the legislature inflict a forfeiture as a penalty, on account of the performance or omission of an act, those who administer the law can not relieve against it, unless there be peculiar circumstances attending the particular transaction that furnish equitable grounds for relief, (Keating v. Sparrow, 1 Ball & Beatty, 368) ; and it is supposed that the present forfeiture is of that character, and so not subject to equitable interference. The landlord here is a municipal corporation, expressly authorized by statute to grant leases of their lands, renewable forever ; and having by an ordinance provided that, in all leases to be granted, a clause should be inserted to the effect that, if the rent should be in arrear for six months, the board of trustees should have power to declare the lease terminated, and that the same should cease *from that* time ; and this clause having been put into the present lease as part of the contract, it is supposed that the forfeiture is a penalty inflicted *by law*, and not *by contract;* in other words, that the provision binds the lessee by its own force as an *ordinance* and not as one of the *terms of the bargain.* Certainly I do not so view the matter. It could not, I think, be insisted that this provision in the ordinance would have affected the tenant if it had been wholly omitted from the contract ; and yet, it must have been equally obligatory in that case as in the present, if the position here suggested is to be maintained. No doubt it was competent for the legislature to provide that, *in all leases* to be granted by the corporation, if the rent remained unpaid, the corporation might terminate the lease by a resolution to that effect, entered upon their minutes ; nor is it doubted but that such a law would have excluded the tenants from the relief to which they would otherwise have been entitled. This is substantially the provision in reference to the leases of the St. Louis commons, and such, it is believed, is the construction

given to it. (St. Louis Commons, Act 18th March, 1835.) But the legislature have not so provided as to the Carondelet commons ; and, although there was no reason for making the distinction, and, in all probability, the distinction made was accidental and not intentional, yet we can not disregard it and treat these leases as it would have been our duty to have treated them, if the effect of the nonpayment of the rent had been declared by the legislature, instead of by the corporation. In the St. Louis cases, the nullity insisted upon is declared by the law of the land ; in the Carondelet leases it is the ordinance of a municipal corporation that is to produce the result ; and the vice of the argument, I think, is in supposing that the legislature, in the grant of the power to make leases, included any political power to change the laws of property. The whole matter, it seems to me, may be stated in a few words. The corporation, in the exercise of their power to grant leases, have, in order to secure a punctual payment of the rent, contracted with the tenants for a forfeiture in case of nonpayment ; and this forfeiture is subject to the general law of the land, for the obvious reason that it has not been otherwise provided by statute, nor have the legislature given the corporation any political authority to inflict it as a penalty. I am therefore for applying to this lease the same remedies that are applicable to all others under the general law.