45 N.J. Super. 128 (1957)
131 A.2d 566
FOUR-G CORPORATION, A CORPORATION OF THE STATE OF NEW JERSEY, PLAINTIFF-APPELLANT,
v.
SEBASTIAN RUTA AND VIRGINIA RUTA, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued March 4, 1957.
Decided May 2, 1957.
*130 Before Judges CLAPP, JAYNE and FRANCIS.
Mr. Daniel Parke Lieblich argued the cause for appellant.
Mr. Ralph W. Chandless argued the cause for respondents (Messrs. Chandless, Weller & Kramer, attorneys).
*131 The opinion of the court was delivered by JAYNE, J.A.D.
The narrative of the transactions out of which the present litigation arose should perhaps begin with the prefatory information that on April 12, 1955 the defendants contracted in writing to convey to one Jack Gruber certain therein described premises situate in the Borough of Paramus, Bergen County, for the purchase price of $17,500. Embodied in the contract was an option accorded to Gruber to acquire by purchase an additional designated tract of land for the price of $22,500. Accompanying the contract of sale a written memorandum was executed by the defendants in which they covenanted to pay to one John M. Gabriel, a realtor, a commission of $1,250 upon the consummation of the sale pursuant to the contract and a commission of $1,750 to him "in the event that the option is exercised by the purchaser" to acquire the additional tract.
In conformance with the privilege expressly conferred by the contract of sale, the purchaser therein named duly assigned his interest in the contract to the plaintiff, and on June 28, 1955 the conveyance to which the contract pertained was made to the plaintiff. On the same occasion a more detailed and formal agreement for recording purposes was executed by the plaintiff and defendants evidencing the option granted by the defendants to the plaintiff to purchase the additional parcel.
It becomes significant to note in the option agreement the provision that the option to acquire the additional property is subject to the leasehold estate therein and an option to purchase, both held by Del-Ed, a corporation, by virtue of the terms of a recorded lease dated July 1, 1952 wherein the defendants and Ruta Sand and Gravel Co., a corporation, were the lessors and Del-Ed the lessee.
On September 29, 1955 the plaintiff announced to the defendants its acceptance of the option to purchase the additional premises, and the parties assembled for the consummation of the sale on November 10, 1955. Certain factual circumstances then became ascendant in consequence.
The lessee, Del-Ed, had already paid to the lessors the *132 rent of $150 for the month of November 1955. At the inception of the tenancy of the premises the lessee had deposited with the landlords the sum of $900, "a deposit as security for the performance of the terms and conditions" of the lease with the further understanding that "said deposit shall apply on the rent for the last six months of the term" (ten years). Then, also, the plaintiff presented an assignment to it by Gabriel of his brokerage commission of $1,750.
Counsel for the plaintiff put forward the following memorandum of the terms in conformity with which the plaintiff would consummate the sale pursuant to the exercise of the option:

 Purchase price .................... $22,500.00
 Credit for deposit ................ 900.00
 Credit for brokers commission ..... 1,750.00
 Credit for rent 11/10-11/30 ....... 100.00
 Purchase money mortgage ........... 16,875.00
 __________ __________
 $19,625.00 $22,500.00
 19,625.00
 __________
 $2,875.00

The plaintiff insisted upon receiving the specified credits. The defendants declined to allow them, except possibly the claimed apportionment of the rent. The culmination of the option was thus unaccomplished.
The parties thereafter retained their irreconcilable convictions, and the present action was instituted by the plaintiff in quest of a judgment for specific performance and compensatory damages. The action was concluded by a final judgment in favor of the defendants, from which the plaintiff appeals.
Comment will be made in sequence relative to the propriety of the three items sought to be recognized as legitimate credits on account of the payment of the purchase price.
The apportionment of the November rent does not appear to have been of itself alone a pivotal consideration in the failure to complete the transaction. In respect of that credit the defendants were conciliatory contingently *133 upon the vendee's relinquishment of the other asserted credits. No provision is discoverable in the option agreement concerning the apportionment of rental paid in advance. The common law, in the absence of statute or of a relevant contractual agreement, awards rent, without apportionment, to whomever owns the reversion on the day the rent became due. Vide, "Moran v. Fifteenth Ward B. & L. Ass'n," 131 N.J. Eq. 361, 365 (Ch. 1942); 66 C.J. 1034, 1041; 92 C.J.S., Vendor & Purchaser, § 288; 32 Am. Jur. 374, § 456; Friedman, Conveyances of Real Property, § 90, p. 272. This rule has been criticized in some quarters as illogical and inequitable, but it is our appellate occupation to declare what the law in this jurisdiction was on November 10, 1955, not to conjecture what it may perhaps be in the less theoretical and more realistic legislative or judicial conceptions of the future.
The two remaining credit claims were more vitally influential. The debated propriety in the law of the allowance of the deposit of $900 in the reduction of the balance of the purchase price is somewhat intricate.
Initially, it may be incidentally noticeable that neither the Ruta Sand and Gravel Co., one of the landlords, to which the deposit was pledged, nor the pledgor, Del-Ed, was a party to the action under review. The plaintiff had constructive knowledge of the pledge and of its terms.
Our decisional law has placed such a deposit agreement in the legal category of an independent pledge with a correspondence of legally recognized characteristics. Kaufman v. Williams, 92 N.J.L. 182 (E. & A. 1918); Cummings v. Freehold Trust Co., 118 N.J.L. 193 (E. & A. 1937); Partington v. Miller, 122 N.J.L. 388, 393 (Sup. Ct. 1939).
Unlike dealing with a lien or encumbrance on the property, the purchaser, in acquiring the demised property subject to the lease, incurred thereby no implied or indirect obligation to discharge the responsibility of returning the deposit to the lessee unless it is transferred to him. Consequently the purchaser could not lawfully or rationally demand a concession for a non-existent future liability. *134 But it is interjected that the deposit in this instance, unless otherwise exhausted by some breach of the covenants of the lease by the tenant, is to be applied to the payment of the rent for the last six months of the term of the lease.
Even so, it remains true that the relationship between the lessee and the original landlords to whom the deposit was made is that of pledgor and pledgees in regard to the security. In the absence of special agreement, the security deposited with the pledge does not by operation of law accompany the conveyance of the reversion in the demised premises. Nor do the pledgees escape the responsibility of accounting for the fund to the pledgor. Cummings v. Freehold Trust Co., supra.
In the present instance there was no such manifest novation of the pledge as to enable the plaintiff to utilize an unpossessed fund for the return of which the pledgees continue to be responsible, as a credit on account of a purchase price owing to the defendants. Moreover, what about the pledgor's rights with regard to the custody of the fund? On the other hand, debtors cannot unload their debts by assigning them. The security deposit in the circumstances and in view of the option agreement as composed was not a credit available to the plaintiff.
Next in the line of consideration is the plaintiff's claimed deduction from the cash payment of the balance of the purchase price of the broker's commission of $1,750. Initially, it is to be observed that the obligation to pay the commission arises from a supplementary agreement, also bearing date April 12, 1955, made by the broker and the defendants. The option agreement entered into by the plaintiff and defendants on June 28, 1955 is mute and wordless concerning the broker's commission. The plaintiff had not contractually covenanted with the defendants to pay it, nor does it appear in any written agreement that it was contemplated at the execution of the option agreement that the plaintiff would do so.
Rather the fact is that the plaintiff voluntarily acquired the broker's chose in action independently of the terms of *135 the option. The broker's commission did not possess the legal character of an existing lien on the property, the discharge of which was a prerequisite to the passage of good title. Nor was the $1,750 a fund in the hands of the defendants, held by them for the general use and benefit of the plaintiff, which the plaintiff could appropriate toward the payment of the purchase price. Cf. Sargent v. Realty Traders, 82 N.J. Eq. 331, 334 (E. & A. 1913).
In principle the following problem emerges: can a vendee of a conventional contract to purchase real estate which expressly or impliedly provides for the payment of the purchase price or balance thereof in cash or its equivalent, procure by assignment (perhaps at less than face value) the debts of the vendor and offset them without the approbation of the vendor against the monetary portion of the consideration for the conveyance? Can a vendee in that manner perform his contractual obligation and oblige the vendor involuntarily to convey?
It is a familiar rule of the common law, unlike the civil law, that mutual debts though liquidated do not per se extinguish themselves and do not cancel one another without mutual assent or judicial action. Accordingly, a cross-demand is not to be treated in the law as a payment except by agreement to that effect by the parties. 3 Williston, Contracts 2503, § 887E et seq.; 6 Williston, Contracts 1808, § 1809 et seq.; 48 C.J. 626, § 61; 70 C.J.S., Payment, p. 242, § 32; 40 Am. Jur. 716.
The rather universally acknowledged reason for this rule is that a debtor who is, to the extent of his demand, a creditor has the right to direct and control the disposition that shall be made of his debt, and to apply or not apply it as he pleases to the payment of demands that he owes, and this privilege cannot be taken from him by the mere unauthorized act of another. 21 R.C.L. 9, 44; 40 Am. Jur. 747, § 50.
A decision of interesting pertinency was rendered in Bidwell v. Garrison, 36 A. 941 (Ch. 1897), in which cause the contract of sale provided incidentally for the construction of a ditch by the purchaser who at the closing of the *136 sale tendered to the vendor the difference between the purchase price and the amount he claimed to be owing to him on account of the cost of the ditch. It was resolved that in the absence of a valid agreement relating to a deduction of the cost of the ditch or a portion thereof from the purchase price, the tender was insufficient to warrant a decree requiring the vendor specifically to consummate the conveyance.
Equity does not compel vendors to perform an alleged renovated and remodeled agreement into which they have never voluntarily entered. Volk v. Atlantic Acceptance & Realty Co., 139 N.J. Eq. 171 (Ch. 1947), affirmed 141 N.J. Eq. 364 (E. & A. 1948); Cline v. Kurzweil 141 N.J. Eq. 508, 514 (Ch. 1948), affirmed 1 N.J. 407 (1949). Here, the acquisition by the plaintiff of the broker's chose of action for his commission and the deduction thereof by the plaintiff from the purchase price was not the bargain encompassed by the option agreement.
It is suggested on behalf of the plaintiff that since the defendants assented to the deduction of the broker's commission in the payment of the purchase price of the former conveyance, they should do likewise in effectuation of the option to purchase the additional property. The terse answer is that they were not legally obligated to do so.
Finally, our attention turns to the equitable relief sought by the plaintiff in the present action. The object of the plaintiff's alleged cause of action is disclosed by the communication dispatched by the plaintiff's counsel to the defendants on November 17, 1955. It reads:
"My client feels that unless you are prepared to close the matter now, in the manner set forth at our closing at your attorney's office last Thursday, November 10th, you leave it no alternative but to start suit for specific performance."
The communication intensified the persistent position taken by the plaintiff. At the trial the following question was addressed to the president of the plaintiff company: "In other words, your position throughout, Mr. Gruber, was that unless Mr. Ruta allowed you for these disputed items, *137 you were not willing to close. Is that right?" He responded, "That is correct."
The complaint alleged that the plaintiff "at the said closing, tendered to defendants the purchase price in accordance with the provisions of the agreement." The trial judge concluded that the plaintiff did not do so, and we are in accord with that conclusion.
We do not perceive in the record submitted to us any justifiable cause to reverse the judgment under review. It is accordingly affirmed.