Melissa M. WILSON, Appellant-Respondent,

v.

William WATT, Appellant-Respondent.

No. 46879.

Supreme Court of Missouri,

Division No. 2.

Sept. 14, 1959.

Motions for Rehearing Denied Oct. 12, 1959.

James H. Keet and Homer D. Wampler, Jr., Springfield, for defendant-appellant.

Farrington & Curtis, E. C. Curtis, Thomas Strong, Springfield, for respondent.

BOHLING, Commissioner.

Mrs. Melissa M. Wilson commenced this action in the circuit court to secure pos-

session of a certain described 1,026 acre farm in Wright County, Missouri, from William Watt, her tenant, for default in the payment of rent under their lease. Defendant filed an answer alleging, among other defenses, that the rent was not in default; and in a counterclaim sought an adjudication of the mutual accounts between the parties, and prayed for a declaratory judgment construing the lease, injunctive relief against further action by plaintiff to forfeit the lease, and a judgment for any amount due defendant. Plaintiff's reply denied the new matter in defendant's answer, admitted the execution of the lease involved, and denied the allegations of defendant's counterclaim. At the commencement of the trial the parties agreed that the court should take a true account of their mutual transactions and enter such judgment as the facts might justify.

The trial court found the issues in favor of plaintiff on plaintiff's petition, decreed a forfeiture of the lease, and entered judgment, February 12, 1958, for plaintiff for possession of the premises, $1,947.47 rent due, and monthly rents and profits of $200 from the date of the judgment until delivery of possession; and a judgment in favor of plaintiff and against defendant for $4,753.71 on the accounting.

The court found that a total of $9,900 rent had accrued under the lease as of June 15, 1956, the date of the service of the notice hereinafter mentioned on defendant; that defendant was entitled to credits totaling $7,952.53 against said rent, leaving a balance of $1,947.47 due plaintiff on rent on June 15, 1956; and on the accounting found defendant was indebted to plaintiff in the total sum of $14,089.10; that is, $1,947.47 for rent due June 15, 1956; $1,700 for rent from June 1, 1956, to February 1, 1958; $110.80 paid to Laclede Electric Co. for lights and fuel; $1,608.83 paid to Barnes Rural Gas for fuel; $75 for wood for fuel; $2,807 for meals for employees and guests of defendant; $5,733.33 for board for defendant; and $106.67 for miscellaneous expenditures for defendant.

The court found defendant was entitled to general credits totaling $9,335.39 against plaintiff, but not as credits against rent; that is, $2,178.72 for labor or carpenter work on and $2,258.52 for material used in the main dwelling; $508.68 for logging and sawmill bills; and $4,389.47 on plaintiff's $3,000 note hereinafter described.

In due course plaintiff and defendant filed their respective notices of appeal.

Plaintiff claims error in allowing defendant the credits of $2,178.72, $2,258.52, and $508.68. Defendant claims error in allowing plaintiff the credits of $1,608.83 and $2,807, and in disallowing credits claimed by defendant totaling $4,543.31. We have jurisdiction by reason of the aggregate amount in dispute.

Plaintiff was 87 years of age at the time of trial, December 20, 1957, and defendant was 76 or 77. On June 1, 1948, plaintiff's life expectancy was about 5.85 years. The controversy turns on their testimony, which conflicts, and we find confusion in the testimony of each. The trial court gave the greater credit to the testimony of plaintiff.

■ Our review is upon the law and the evidence, giving due regard to the opportunity of the trial court to judge the credibility of the witnesses and due deference to the findings of the trial court. Moore v. Adams' Estate, Mo., 303 S.W.2d 936 [4]; McFaw Land Co. v. Kansas City Tit. & Trs. Co., 357 Mo. 797, 211 S.W.2d 44 [1].

Our review of the record confirms the trial court's findings to the effect that defendant's exhibits, consisting of checks and invoices, embraced expenditures obviously for his own business and without benefit to plaintiff in an apparent attempt to exaggerate his claims; that it is difficult to determine what is fairly chargeable against plaintiff other than credits plaintiff conceded were proper; that defendant, without agreement with plaintiff, made improvements of a temporary and also of a more or less permanent nature in contravention of the lease provision "that this contract and

lease contains all the agreements between the parties hereto," that some claims were withdrawn by defendant's attorneys during the trial; and that plaintiff protested all that were mentioned to her, including the improvement of the dwelling.

Defendant has farmed plaintiff's land continuously since 1929 under various leases and partnership agreements. The parties agreed upon a settlement of their accounts on April 22, 1948, and, in connection therewith, plaintiff delivered to defendant her $3,000 note, dated June 1, 1948.

Under the lease here involved, also dated June 1, 1948, but subscribed and sworn to June 9, 1948, plaintiff, as first party, leased her farm to defendant, as second party, for fifteen years, beginning June 1, 1948, for $1,200 per year, payable in installments of $300 on June 15, 1948, and $300 on the 15th day of September, December, March and June thereafter, including March 15, 1963.

It was also agreed that each party "shall have the use, benefit and occupancy of the main dwelling, the yard, the garden and a truck patch" on said premises; "and that the party of the second part is to furnish the lights and fuel for the dwelling."

The lease also contained a provision, hereinafter quoted, for its termination upon the nonpayment of $1,200 rent in any year during the term of the lease, and the surrender of possession within ninety days after notice of termination to defendant.

The parties further agreed "that this contract and lease contains all the agreements between the parties hereto, and that all other and former agreements, contracts and accounts and settlements are satisfied in full," except the aforesaid $3,000 note, "which note is not affected by this contract and lease."

The house on the farm had been destroyed by fire and, at the time of the lease, plaintiff and defendant were living in what is described as a "chicken house." Some work had been done on a new dwelling but it was not habitable. The new dwelling was completed in 1951. Plaintiff and defendant moved into it on April 21, 1951, and have lived there since.

Plaintiff testified, based on offers received in 1952 and 1953, that her farm had a reasonable market value of between $110,000 and $125,000, and a reasonable annual rental value of $2,400; and that she made the rent small because defendant had agreed to take good care of the place.

On June 15, 1956, plaintiff caused a "Notice of Demand for Rent and Intention to Terminate Lease" for nonpayment of rent to be served upon defendant. The material portions thereof are more appropriately quoted hereinafter. The rights of the parties under the lease of June 1, 1948, involve an adjustment of their mutual accounts, and what credits, under the facts, defendant is entitled to charge against the $1,200 annual rent called for by the lease. We take up the accounting branch of the case.

The testimony was to the effect each party paid things for the other. Plaintiff testified that she was getting deeper in debt and was "tied" so she could not do anything about the farm; that she made repeated efforts, verbally and in writing, to reach a settlement with defendant of their mutual accounts; that she had no desire to deprive defendant of his lease until it became impossible "to get anything done," and that finally defendant gave her a book (plaintiff's exhibit B) containing entries on separate pages for the years 1948 through 1953, all in defendant's handwriting, of credits he claimed against his rent. Plaintiff accepted items totaling $7,952.53 claimed therein by defendant as payments on rent, and stated that these were the only payments made by defendant on rent; and that defendant had paid no rent after 1953. Plaintiff offered in evidence a statement in defendant's deposition to the effect that he had not paid plaintiff anything since 1953. The only items plaintiff refused to accept as credits on rent were items in exhibit B listed under the head "Carpenters" and

"Material," $2,178.72 and $2,258.52, respectively. The trial court found that the total rent payable under the lease was $9,600 on March 15, 1956, and $9,900 on June 15, 1956; that defendant was entitled to total credits against said rent of $7,952.53, leaving a balance due plaintiff of $1,647.47 on March 15, 1956, and a balance of $1,947.47 on June 15, 1956, and such rent constituted more than one year's rent of $1,200.

■ *Fuel for Dwelling.* Defendant's attack against the $1,608.83 credit allowed plaintiff for fuel paid Barnes Rural Gas is without merit. Under the lease each party was to "have the use, benefit and occupancy of the main dwelling" and defendant was "to furnish the lights and fuel for the dwelling." Defendant argues that the "main dwelling" was the chicken house where wood was used for fuel. However, he testified that the provisions in the lease referred to the house they were living in when the lease was executed "or any other building that would be built for that purpose." He paid for the electricity used in the new dwelling. Defendant has had the use, benefit and occupancy of the main dwelling ever since the parties moved into it in April, 1951. The foregoing evidence sufficiently sustains the trial court's finding on this issue.

■ *Boarding Defendant's Hired Hands and Guests.* Plaintiff furnished meals for defendant's employees and guests. Her exhibit F, admitted in evidence without objection, shows a total of $2,807 due her for this service up to the time of trial. Defendant admitted at the trial that he was indebted to plaintiff for his board at the rate of $50 a month from June 1, 1948, and that plaintiff had a right to charge for meals furnished his employees and guests. He testified the allowance should not exceed $700, and so contends in the argument portion of his brief. Defendant stated at the trial he had not paid individual items in exhibit F totaling much more than $700. The entries mentioned in defendant's argument as having been paid by defendant total

$263. Defendant's counsel was furnished a copy of this exhibit several weeks prior to the trial. Defendant testified in chief that he had records covering the account for the board of his men, and could get them. In answer to questions by the court defendant stated he did not know of any payments to plaintiff for board of his men or guests since 1948; that he had given plaintiff credit on her account. The court asked: "Have you ever given her any credit on any book you kept for board that you owed her; that is, on monies that you claimed you advanced to her, or have you ever made any payment to her in cash or by check or any other way, paying the board of your hired hands since 1948? A. No." Defendant again stated he had given plaintiff credit on the rent and had a record of it; but when the court asked: "What I am getting at, did you keep any written record of how many hired hands you had board there, as to when they stayed there, as to how many meals they took"; he answered: "I couldn't keep a record of that." We are not inclined to interfere with the finding of the court on this item.

*The $3,000 Note.* Plaintiff delivered her $3,000, 4%, compounded annually, interest, one-year note, dated June 1, 1948, to defendant in connection with the settlement of their transactions prior to the lease. The court allowed defendant a general credit of $4,389.47, principal and interest, therefor. Defendant contends this should have been allowed as a credit against the rent.

■ The general rule, stated in 70 C. J.S. Payment § 32, p. 242, "is that, in the absence of agreement or consent, there is no right to pay by the transfer of debits or credits or the application of the debt on a demand due from the other party." Four-G Corp. v. Ruta, 45 N.J.Super. 128, 131 A.2d 566, 570; Hamilton v. Wilcox, 126 Me. 529, 140 A. 201 [5].

■ Plaintiff admitted she had made no payment on the note. She testified she considered the note was a separate thing

from the lease; had nothing to do with the lease whatever, and was not a payment of rent in advance on the lease, and that there was no verbal agreement as to how the note was to be handled. Defendant stresses a statement by plaintiff at the trial that there was no reason why the note should not be handled as a credit on defendant's rent. This answer was stricken at the request of plaintiff's counsel, the court stating the witness and the lawyers were all talking at once and he did not get the question or the answer. She did not say she had agreed that the rent be credited on the note. Plaintiff testified she tried hard to collect the rent for the first four quarters but was ignored, told to mind her own business, and to borrow the money. "Q. Wasn't it true, Mrs. Wilson, that the reason was that he had already paid the rent? A. No, never said so. Q. In advance? A. He never said so. The note covered that." From this defendant argues that the $3,000 defendant advanced to plaintiff in April and May, 1948, was agreed to be an advance on the rent. Plaintiff had testified a few minutes before that the consideration for the note was a check for $500 and another for $2,500 and if she had in mind that the note covered the checks and the checks were not an advance on the rent, the answer conforms to her other testimony. Furthermore, plaintiff's exhibit B, in defendant's handwriting, shows that he paid $4,827.04 rent to plaintiff in the years 1948, 1949 and 1950, and did not claim the note or the debt it evidenced as an advancement on the rent. The court rightly construed an excerpt from a deposition of plaintiff covering a conversation in 1951 that if she sold the farm at that time the note was to be considered in the payment as an acknowledgement by plaintiff that she owed the note and not that it constituted an advance against the rent.

Notwithstanding defendant testified he gave plaintiff a $900 credit on the note during the first year of the lease, he also testified he did not have any discussion with plaintiff about that; that in 1953, when plaintiff had an opportunity to sell the farm, he told her she owed the $3,000 note and all the money he had advanced. At the trial defendant stated plaintiff still owed the note in its entirety, both principal and interest, and that there had never been any credit whatsoever on the note. No credit was endorsed on the note. We think the record sustains on the conflicting testimony the trial court's finding that there was no agreement that defendant was to credit the rent on the note.

**■** *Labor and Material for Dwelling.* Defendant in his argument states the court should have applied the credits of $2,178.72 for labor or carpenter work on and $2,258.- 52 for material used in the new dwelling on the rent. Plaintiff's position is that defendant is not entitled to any credit for said items or, if entitled thereto, then only for a lesser amount, and not as credits against the rent.

Defendant started work on the unfinished dwelling in December, 1950. As stated above, plaintiff and defendant have lived in the dwelling since April 21, 1951. Defendant testified the dwelling was not completed until later in 1951. It is a large modern dwelling.

Defendant testified that plaintiff told him to keep his statements and the checks he paid for completing the dwelling and he would be repaid when the farm was sold or it would be credited on the rent. Answering a question by the court, he stated this obligation was to run along until plaintiff was in a position to pay or until the lease was up. He never demanded that his payments be applied on the rent and knew plaintiff could not pay for improving the dwelling.

Plaintiff testified she never told defendant to make the improvement but told him that she could consider finishing the house only if he would raise the rent; that he knew she didn't have the money; that she told him time and again she could not and would not pay for the house and defend-

ant said he didn't give a damn whether he got a cent or not, he was going to finish it; that she did not protest defendant's completing the house but protested paying for it herself, and that what he did was without her consent.

Defendant refers to plaintiff's exhibit B. Plaintiff testified that defendant would not explain his expenditures on the dwelling to her, and she did not know how much he claimed until she received exhibit B. Exhibit B, mentioned above, is a farm account book showing the amounts by months defendant claimed as credits on separate pages for the years 1948 through 1953, all in his handwriting. The items for improving the dwelling appear separately on the page for 1951, and show only the amounts claimed under columns headed "Carpenters" and "Material," and separately from the column plaintiff acknowledged to be a proper charge against rent. Plaintiff testified she relied on exhibit B; and from her testimony on several occasions during the trial we think, as did the trial court, that she made it clear she accepted the credits in said exhibit B as credits on defendant's rent with the exception of what defendant claimed under "Carpenters" and "Material." Plaintiff stated she did not tell defendant she did not accept these expenditures as proper credits on rent because defendant would not talk to her about it. Defendant testified that he did not tell plaintiff how to credit any item shown on exhibit B, and that she could apply them: "Q. Any way she wanted to? A. Yes." The trial court found that plaintiff protested against the improvement of the dwelling.

Defendant's exhibits 5 and 6 consist of checks and invoices defendant claimed he paid for improving the dwelling; exhibit 5 for carpenters or labor and exhibit 6 for material. Examining the checks in exhibit 5, totaling $2,343.47, we find, as did the trial court, that checks bearing dates in November, 1951, and totaling $164.-75 carry the notation "Labor Rep. Cottage" (not the dwelling), and show an attempt to erase the notations on all save one of said checks. The last check prior to the November checks bears date of June 14, 1951, and the expenditures for carpenters or labor up to that date totaled $2,178.72, the amount shown therefor in exhibit B and allowed to defendant as a general credit by the trial court.

Defendant's exhibit 6 contains checks and invoices totaling $2,366.97. Items paid in 1949, 1950 and 1951, prior to starting the improvement of the dwelling, and items after June 14, 1951 (the date of the last check paid for labor in improving the dwelling), incurred in 1951, 1952, 1953 and 1956, are included. It appears that defendant twice paid two invoices. Included are items which the testimony or the checks or the invoices showed were for repairs, for the cottage, for the dairy barn, and other buildings not connected with the improvement of the dwelling. The trial court found that the record indicated that only $1,351.95 was used in improving the dwelling, but in view of exhibit B, in defendant's handwriting, listing a total of $2,-258.52 for material, allowed that sum for material. The record shows that this allowance is excessive by $906.57, and should be reduced to $1,351.95.

This is not the usual landlord and tenant case. It involves a 15-year lease of a farm and the tenant advancing a substantial sum to make habitable an unfinished dwelling occupied by the landlord and tenant for their mutual convenience and comfort. Ordinarily, the tenant is not entitled to compensation for the value of improvements or repairs made on the leased premises in the absence of an agreement that the landlord pay therefor. Innes Land & Leasing Co. v. Wyatt, Mo.App., 56 S.W.2d 159, 160 [2, 3]; Wilkerson v. Farnham, 82 Mo. 672 (2); Gay v. Joplin, C.C., 13 F. 650(2); Houfburg v. Kansas City Stock Yards Co., Mo., 283 S.W.2d 539(1); 51 C.J.S. Landlord and Tenant § 399 a, p. 1141; 32 Am. Jur. 524, § 659. Plaintiff's protest was against paying for the improvements herself, evidently because she did not have the

funds. Deference is to be given the findings and allowances of the trial court on the items plaintiff attacks. We think the findings of the trial court on the accounting for the improvement of the dwelling as a general credit against plaintiff was an equitable adjustment of the accounts under consideration, subject, however, to the modification indicated for "Material."

*Logging and Saw Mill Operations.* The court allowed this item (defendant's exhibit 13) in full, $508.68, as a general credit on a finding that plaintiff's, as well as defendant's, testimony indicated plaintiff realized three times said amount from the sale of lumber, notwithstanding some of the lumber was sawed for cattle pens, feed bunks and other purposes for defendant's operation of the farm and of no benefit to plaintiff. Plaintiff contends defendant is entitled to no credit for this item. Defendant testified that a creditor was pressing for payment for installing gas and appliances in the dwelling and plaintiff sold some timber and realized about $2,000 therefor. Plaintiff testified this bill was for $2,100, defendant paid $400, refused to pay any more, and she had to arrange to pay the balance to protect the farm. We have examined the record, checks and invoices in exhibit 13 and consider the evidence not satisfactory to sustain the following charges against plaintiff: April 5, 1949, $45.52; April 15, 1949, $16.35; December 21, 1949, $12.58; May 6, 1950, $16; May 17, 1953, $82.40. Giving deference to the finding of the trial court, we conclude this credit should be reduced by $172.85, the total of the above checks, and allowed for $335.83 as a general credit.

It is to be remembered that defendant, who had been in the beef cattle business, started in the dairy business in 1949. The court found that all of defendant's improvements, other than for the dwelling, were purely voluntary on the part of defendant and without any authority or assent or agreement on the part of plaintiff. Defendant contends he is entitled to credits for the following items:

*Moving Moreland Buildings.* In 1949 the buildings on the Moreland forty acres of the farm, consisting of a cottage, a barn and perhaps other buildings, were moved to the location of the main farm buildings. Plaintiff testified that defendant wanted the cottage for his help and the barn for more room for his calving cows, and agreed to repay plaintiff if she would have the buildings moved. Defendant stated he believed plaintiff never asked to have the buildings moved. Plaintiff had the buildings moved, paying $740 therefor. Defendant has used the buildings constantly since. Plaintiff testified he repaid her the $740. In April, 1949, defendant gave plaintiff a check for $2,540, which he stated was $900 for rent accrued and $900 advance rent, and he claims the remaining $740 was a loan to plaintiff. However, plaintiff's exhibit B, in defendant's handwriting, shows a charge against plaintiff in April, 1949, of "$1800 rent" and "$740.00 moving buildings"; and, after totaling the column for the year, defendant deducted $740 from the total, indicating it was a repayment to plaintiff, and he stated he charged the $740 to "my building account."

*Wiring for Barn.* This item (defendant's exhibit 7), $70.70, was for wiring the mule barn and for an outside light for the well house and pump for defendant's use there. Plaintiff testified defendant did not talk to her about this. Defendant's testimony was that he was to be repaid if the farm was sold.

*Well and Cottage.* This item (defendant's exhibit 8), $87.64, included piping for water from the well to the Moreland cottage, used by defendant's help, and such items as light bulbs, nails, long and short handles, plow points, dairy cleaner, silage fork, hinges, etc. Defendant stated plaintiff said carry out the work and charge it against rent. The items embrace expenditures for material and improvements in defendant's farm operations. Defendant's credibility was for the trial court.

*Well and Pump.* The evidence supports a finding that the greater portion of this

expenditure (defendant's exhibit 9), $2,566.-04, was for drilling a 510 foot well in the fall of 1949, putting in a pump, building a well house, and laying about a half mile of pipe to the Moreland cottage, and was required by the health authorities for the sale of Grade A milk in defendant's dairy business. There was also included in the exhibit charges for water tanks used by defendant in watering his livestock. Plaintiff testified she did not authorize the putting in of the waterworks and absolutely had no agreement with defendant to pay all or any part of the costs incurred in connection with it. Defendant's testimony was that he volunteered to furnish the money for this and was to be reimbursed if the farm was sold.

*Labor and Material for Moreland Buildings.* This exhibit (defendant's exhibit 10), $649.84, covers items for labor and material used and paid for in 1949 by defendant in improving the Moreland buildings. Defendant testified he was to be compensated if the farm was sold. Plaintiff testified she did not authorize this expenditure or the charge of it to her in any way.

*Roofing Mule Barn.* This exhibit (defendant's exhibit 11), $439.09, covers items paid for by defendant in June, 1948. Defendant testified he was to be reimbursed if the farm was sold. Plaintiff testified she did not remember ever telling defendant anything about the mule barn.

■ The credibility of plaintiff and defendant as witnesses was for the trial court; and our view of this record is that the trial court's disallowance of the above mentioned credits to defendant was not clearly erroneous. The findings are approved.

Defendant next questions the sufficiency of the lease and of the notice to terminate and demand for possession to authorize a forfeiture.

Defendant contends that "The forfeiture provision in the lease merely secured payment of the rent"; and constituted no authority in plaintiff to terminate the lease. The lease provided:

"It is agreed by the [tenant] that if for any reason he fails, neglects or refuses to pay the $1200.00 in any year during the term of this lease, that the lease shall then terminate and the [tenant] will surrender to the [landlord] the peaceable possession of said premises, within 90 days from the date he is notified to surrender said possession."

This provision was not a mere covenant, but was a valid and enforceable condition subsequent imposed upon defendant's leasehold interest. The issue is developed and ruled in Waring v. Rogers, Mo.App., 286 S.W.2d 374, 376, 377 [9, 17, 18], where the forfeiture provision was less favorable to the landlord than the instant provision. See also Eurengy v. Equitable Realty Corp., 341 Mo. 341, 107 S.W.2d 68, 72 [10]; 3 Thompson on Real Property, Perm.Ed., §§ 1458, 1463, 1482; Jones, Landlord and Tenant, §§ 482, 487, 502; Taylor's Landlord and Tenant, 9th Ed., §§ 271, 275; 31 C.J.S. Estates § 20, p. 30 and 19 Am.Jur. p. 520, §§ 58, 62, 64; 51 C.J.S. Landlord and Tenant §§ 104b, 110, pp. 683, 687, and 32 Am. Jur. p. 720, §§ 847, 848, 852.

■ Plaintiff's notice of her determination to terminate the lease was served upon defendant by the Sheriff of Wright County, Missouri, on June 15, 1956, and so far as material here read:

"By the terms of that lease you agreed to pay rental at the rate of $1,200.00 per year, payable in quarterly installments of $300.00 each. A payment of $300.00 will be due on June 15, 1956, and on that date you will also be in arrears in your rent in the amount of $1,647.47, making a total due on June 15, 1956, of $1,947.47.

"I hereby make demand of you for the payment of that sum of money as rent due me under said lease; and I further hereby notify you that unless said rental is paid in full on the due date I will elect to terminate said lease and will expect you and I hereby

require you to surrender possession of said real estate to me within ninety days from June 15, 1956, in accordance with the terms and provisions of said lease."

The finding of the trial court that defendant owed $1,947.47 rent on June 15, 1956, was correct. Plaintiff made a prima facie case of her right to terminate the lease.

Plaintiff's demand and notice was on the proper date, June 15, 1956, the precise date the rent became due, was for the proper amount, $1,947.47, and was on a ground under which, by the terms of the lease, plaintiff was expressly authorized to terminate the lease. Carbonetti v. Elms, Mo.App., 261 S.W. 748, 750 [1], and Waring v. Rogers, Mo.App., 286 S.W.2d 374 [9, 17, 18, 20].

Defendant had defaulted in the payment of more than the $1,200 yearly rent prior to June 15, 1956, there being $1,947.47 rent due on June 15, 1956. Plaintiff's notice required defendant to surrender possession "within ninety days from June 15, 1956, in accordance with the terms and provisions of said lease." Defendant, under the lease, agreed to surrender peaceable possession of the premises to plaintiff "within 90 days from the date he is notified to surrender said possession." Under plaintiff's demand for the surrender of possession, June 16, 1956, would be the first day of the ninety day period.

■ Defendant says the breach, if any, was not unequivocal. We are in accord with rulings that forfeitures of leaseholds are viewed with disfavor, and are to be limited to express stipulations. Dodier Realty & Inv. Co. v. St. Louis Nat. Baseball Club, 361 Mo. 981, 238 S.W.2d 321, 323 [1, 2], 24 A.L.R.2d 683, following J. E. Blank, Inc. v. Lennox Land Co., 351 Mo. 932, 174 S.W.2d 862, 868 [9, 10], involving a clause providing for the payment of lessor's income taxes as additional rent and stressed by plaintiff, where the court's statement was based upon the ambiguity of the clause involved. The instant clause is a condition subsequent, is not ambiguous and, as we read the record, defendant, notwithstanding plaintiff afforded him a reasonable opportunity to adjust their controversies, did not make a payment on the rent from 1953 to the date of trial, and owed $1,947.47 rent on June 15, 1956, when plaintiff's notice was served. We think the record supports a finding that defendant's breach was unequivocal.

■ Defendant says plaintiff's undue delay in declaring a forfeiture bars her from asking forfeiture. Plaintiff made repeated demands on defendant during the first nine months of the lease and also after defendant stopped making rental payments in 1953. Plaintiff wrote defendant a letter May 15, 1956, which he admitted receiving, asking him to let her know what she owed him, to make a settlement of their accounts, and to avoid litigation. Plaintiff's repeated requests for a settlement and willingness to give defendant opportunities to retain his lease do not mean she was not asking for her rent. The authority conferred upon plaintiff to terminate the lease was limited to defendant's failure "to pay the $1200.00 in any year during the term of this lease." Defendant was not in default to the extent of $1,200 until December, 1955. He made no payment thereafter. The trial court found that the improvements made by defendant, except the improvement of the dwelling, which was finished in 1951, were purely voluntary on the part of defendant and without authority from or agreement with plaintiff and, as found by the trial court, defendant, notwithstanding some of his testimony, allowed plaintiff no credit on the $3,000 note, but claimed at the trial the whole of the note, principal and interest, was due and payable. Defendant directs us to no testimony of record that plaintiff waived her right to insist on a forfeiture if defendant forebore suing on the note. The trial court considered plaintiff had not waived her right to forfeit the lease for the nonpayment of the rent, and the case differs on the facts from Garnhart v. Finney, 40 Mo. 449, 459; Priest v. Oehler, 328 Mo. 590, 41 S.W.2d 783, 788 [5–9]; Carbonetti v. Elms, Mo.App., 261

S.W. 748, 750 [3], stressed by defendant. We overrule defendant's contention.

Defendant contends the trial court abused its discretion in declaring a forfeiture; and he is entitled to relief in equity against a forfeiture notwithstanding findings he owed the rent and plaintiff's notice of termination and demand for possession were proper.

When a lease contains a provision authorizing the lessor to terminate the tenancy on the failure to pay rent, the lessor is authorized to end the lease on the breach of such a condition. Such contracts have been upheld. Waring v. Rogers, Mo.App., 286 S.W.2d 374, 379 [17, 18]; Eurengy v. Equitable Realty Corp., 341 Mo. 341, 107 S. W.2d 68, 72 [10]; Kanakry v. Sales Finishing Plants, Inc., 53 R.I. 455, 167 A. 121; Cirlot v. Stevens, 222 Ala. 271, 132 So. 163 [2, 3]; 51 C.J.S.Landlord and Tenant § 110, p. 687; 32 Am.Jur. 723, § 852.

Plaintiff argues that courts of equity cannot relieve against a statutory forfeiture, which she claims is involved in this case. She stresses provisions of Chapter 534, R.S.Mo.1949, V.A.M.S., entitled "Forcible Entry and Unlawful Detainer," to wit: sections 534, 280, 534.030, 534.200, 534.330, and Waring v. Rogers, Mo.App., 286 S.W.2d 374 [2], an unlawful detainer action. Plaintiff instituted this action in the circuit court of Wright County, Missouri, April 3, 1957. It has been held that magistrates have exclusive original jurisdiction of actions under Chapter 534. Ashenhurst v. Johnson, Mo.App., 167 S.W. 2d 397, 399, certiorari quashed, State ex rel. Johnson v. Blair, 351 Mo. 1072, 174 S.W.2d 851; State ex rel. Morris Bldg. & Inv. Co. v. Brown, 228 Mo.App. 760, 72 S.W.2d 859, 860. As pointed out in the Ashenhurst case, plaintiff's action, having been filed in the circuit court, was for ejectment, the statutory provisions applicable being found in Chapter 524. Plaintiff does not show why the above authorities do not preclude her reliance upon the provisions of Chapter 534. In plaintiff's other Missouri cases the court proceeded on the theory statutory provisions authorized the forfeiture. Woodson v. Skinner, 22 Mo. 13, 23; Taylor v. City of Carondelet, 22 Mo. 105, 111; City of Carondelet v. Lannan, 26 Mo. 461; City of Carondelet v. Wolfert, 39 Mo. 305, 311. The Taylor case, supra, and Rainey v. Quigley, 180 Or. 554, 178 P.2d 148, 150 [1], 170 A.L.R. 1149, cited by plaintiff and involving a statutory forfeiture (178 P.2d loc. cit. 153), recognize that courts of equity may relieve against forfeitures agreed upon by the parties but not those provided by statute. It follows that section 534.280, providing: "The determination of any lease by forfeiture shall, within the purview of this chapter, have the same effect as if the term thereby created had expired," is not applicable to this action.

Defendant advances a number of grounds against a forfeiture. He argues plaintiff's right to a forfeiture is founded on a provision of the lease that can be satisfied by a money judgment; that she can be made whole by the payment of the rent; that that is all she should require, and that equity should relieve against a forfeiture of the lease upon the payment of the rent. The trial court's finding was that "defendant was in arrears in the amount of $1,947.-47 on the rent due and plaintiff is entitled to have the lease forfeited for nonpayment of rent and it is hereby so adjudged," thus apparently placing the forfeiture on the provision of the lease without considering the equities and affording defendant an opportunity to comply with such conditions as the court might impose to prevent a forture.

Emery Bird Thayer Dry Goods Co. v. Williams, 8 Cir., 98 F.2d 166, 174 [15], is here stressed by plaintiff for the proposition that courts will not rewrite the provisions of a lease providing for forfeiture for nonpayment of rent; but that opinion was set aside upon rehearing in 8 Cir., 107 F.2d 965.

Defendant testified, not questioned by plaintiff, that he had on the farm an investment in cattle of $26,000 or more and farm equipment of about $12,000. In addition he had expended for improvements, as we read the record, $11,000 to $13,000, most of which were for his farm operations, but were made with the reasonable belief he would have possession for the full fifteen year term. Some of these improvements were withdrawn from the consideration of the court at the trial and others have not been presented for consideration upon this appeal. He advanced plaintiff $3,000 before the execution of the lease to meet a pressing obligation, and did not press plaintiff for payment after it became due. Plaintiff's testimony and her letter of May 15, 1956, to defendant recognized that defendant had a fifteen year lease, and she desired that he receive his full term if he paid the rent, and that he was to be given credit or paid for any just thing she owed him.

It has been said that forfeitures of leases are not favored at law and equity abhors forfeitures. Haeffner v. A. P. Green Fire Brick Co., Mo., 76 S.W.2d 122 [2].

Defendant did not in his answer to plaintiff's petition make a tender of any rent; but in his counterclaim for a declaratory judgment, injunction and accounting tendered any amount the court might find owing to plaintiff for rent upon the accounting. See Priest v. Oehler, 328 Mo. 590, 41 S.W.2d 783, 788 [12, 13]; J. E. Blank, Inc. v. Lennox Land Co., 351 Mo. 932, 174 S.W.2d 862, 869 [17].

Defendant's right to equitable relief against forfeiture is not as favorable as that of the tenant in Garnhart v. Finney, 40 Mo. 449, 461, 462, but we conclude that the peculiar facts of the instant case are sufficient for affording him a reasonable opportunity to avoid the hardship that a forfeiture will entail by meeting his obligations on the rent after an adjudication of the mutual accounts between the parties.

Dodier Realty & Inv. Co. v. St. Louis Nat. Baseball Club, 361 Mo. 981, 238 S.W.2d 321, 326, 24 A.L.R.2d 683; J. E. Blank, Inc. v. Lennox Land Co., supra; Frank v. Dodd, Mo.App., 130 S.W.2d 210, 215; E. H. Powers Shoe Co. v. Odd Fellows Hall Co., 133 Mo.App. 229, 244, 113 S.W. 253, 258; Annotation, 31 A.L.R.2d 321, 368.

It follows that the provision of the judgment awarding plaintiff $200 for monthly rents and profits from the date of the judgment should be modified so as to condition said provision upon defendant's failure to comply with the order of the court affording him an opportunity to avoid the forfeiture.

The decree and judgment is reversed and the cause remanded with directions to reduce the credit allowed defendant for "Material" for the dwelling to $1,351.95, and for "Logging and Sawmill Operations" to $335.83, and to increase the money judgment for plaintiff on the accounting to $5,833.13 as of the date of the original judgment; and to condition the forfeiture of the lease upon defendant's noncompliance with such reasonable conditions and within such reasonable time as the court may impose, and to condition defendant's payment of the $200 monthly rents and profits from the date of the judgment to the surrender of possession upon defendant's failure to comply with the conditions imposed by the court, and to modify the judgment in any other respect to conform to the foregoing. The decree and judgment in other respects to stand. One half of the costs of this appeal is taxed against each party. It is so ordered.

BARRETT and STOCKARD, CC., concur.

PER CURIAM.

The foregoing opinion by BOHLING, C., is adopted as the opinion of the court.

All concur.